**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-41029

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROQUE RODRIGUEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

November 24, 1999

Before POLITZ and STEWART, Circuit Judges, and LITTLE,[*] District Judge.

POLITZ, Circuit Judge:

Charged in a four-count indictment with conspiracy to possess with intent to distribute cocaine, possession with intent to distribute, and aiding and abetting in the distribution, Roque Rodriguez pled guilty, pursuant to a plea agreement, to the conspiracy count. He was sentenced to imprisonment for 125 months and four

_____

[*] District Judge of the Western District of Louisiana, sitting by designation.

years supervised release. He appeals, contending that the trial judge exceeded the strictures of Rule 11 of the Federal Rules of Criminal Procedure. For the reasons assigned we vacate the conviction and sentence and remand for further proceedings consistent herewith.

## BACKGROUND

At the beginning of his guilty plea hearing, Rodriguez expressed doubt about whether he wanted to plead guilty instead of going to trial. The government responded that if Rodriguez elected to go to trial, it would file a request for a sentencing enhancement. The court then questioned Rodriguez to determine whether he understood the impact of a decision to go to trial:

THE COURT: ... And Ms. Booth [the government's attorney] is going to file an enhancement, which means – what is your – what's his minimum going to be?

MS. BOOTH: Well, Your Honor, I think with the evidence it's going to be a ten-year minimum.

THE COURT: Do you understand that?

DEFENDANT: Yes, Your Honor.

THE COURT: And do you want to go to trial?

DEFENDANT: I'm not ready at the time, Your Honor. I need some more time.

THE COURT: You don't get any more time. Time is up. Pardon?

DEFENDANT:    Go ahead and find me guilty, Your Honor, and – that'll be okay.  I just need some more time, Your Honor, about a couple of weeks.  Two or three weeks more.

THE COURT:    I can't give you any more time.

DEFENDANT:    All right, Your Honor.  I understand that.

THE COURT:    But if you go to trial tomorrow and you're found guilty, you'll have to go to prison for ten years.

When Rodriguez expressed a willingness to go to trial, the court asked him if he was "sure [he] want[ed] to do that."  Rodriguez repeated several times that he wanted more time to decide, but was denied a continuance in each instance.  Rodriguez's attorney told the court that Rodriguez "feels like he is not getting a good deal out of this situation and he wants another opinion."[1]  The court then asked about the plea agreement.  The government outlined the agreement, which included a promise to assess relevant conduct as to only two of the counts if the government was not forced to file the enhancement.  The deal also included a three point reduction for acceptance of responsibility, a recommendation for a sentence at the low end of the applicable guidelines range, and the opportunity for a motion for a downward departure under the sentencing guidelines.

---

[1]Rodriguez claims that his requests for more time were misunderstood as stalling tactics when they actually were made so that he could confer with a Spanish-speaking attorney.

Because Rodriguez, who also faced state charges, was concerned about the total amount of time he was likely to spend in jail, the court recessed the hearing to allow Rodriguez's attorney to meet with state prosecutors. After the recess, counsel informed the court that the state prosecutors had agreed to recommend that any state sentence he might receive should run concurrently with his federal sentence.

Rodriguez's attorney then inquired as to what sentence Rodriguez would receive under the proposed agreement. The court responded that it would not let Rodriguez know that. The government renewed its assertion that if Rodriguez opted for a trial, that it would file a sentencing enhancement that afternoon. The court told Rodriguez that once the sentencing enhancement was filed it could not be withdrawn, and added:

> Yeah, that's for sure. Right now he's looking at five years minimum and in about 30 minutes he's going to be looking at ten years minimum. That's all we know for sure. He's going to get the higher of the mandatory minimums under the guidelines.

The court denied a request for a continuance by Rodriguez, and told him that he would have to go to trial. Rodriguez then stated that he was "willing to take the plea bargain," but he wanted more time before pleading guilty. The court again told Rodriguez that he would be required to make his decision then and there.

4

Rodriguez then agreed to enter the plea bargain. At this point the court recessed again, stating:

> All right. Let Mr. Botary [Rodriguez's attorney] spend some more time with his client and make sure that he understands the plea, that he wants to take it. Because I'm getting concerned now about whether he feels too pressured that he's got to take the plea and we're going to get, you know, a 2255 down the road about that ...

After the recess, Rodriguez signed the plea agreement and the court conducted the Rule 11 colloquy.

## ANALYSIS

Although a district court may reject a plea agreement [2] and express its reasons for doing so, Rule 11(e)(1) is clear in its prohibition against "all forms of judicial participation in or interference with the plea negotiation process."[3] The reasons for this bright line rule have been expressed in a number of cases decided by this court. "First, it diminishes the possibility of judicial coercion of a guilty plea, regardless whether the coercion would actually result in an involuntary guilty plea. Second, the judge's involvement in the negotiations is apt to diminish the judge's impartialilty. By encouraging a particular agreement, the judge may feel personally involved, and thus, resent the defendant's rejection of his advice. Third,

---

[2] Fed. R. Crim. P. 11(e)(4).

[3] **United States v. Adams**, 634 F.2d 830, 835 (5th Cir. 1981).

the judge's participation creates a misleading impression of his role in the proceedings. The judge's role seems more like an advocate for the agreement than a neutral arbiter if he joins the negotiations."[4]

It is manifest that the cited trial court statements exerted pressure on Rodriguez to accept the plea agreement that had been negotiated with the government. The judge discussed the probable consequences of each decision, and when Rodriguez indicated that he might want to go to trial, she asked whether he was "sure [he] want[ed] to do that." She indicated a belief that if Rodriguez opted for a trial, he likely would be found guilty.[5] In addition, the judge told Rodriguez that a sentencing enhancement filed by the government could not be withdrawn, despite the absence of any legal authority for this proposition. Any of these statements would have been sufficient to put pressure on Rodriguez. Even absent these statements there was other pressure present because pressure is inherent in any involvement by a judge in the plea negotiation process.[6]

---

[4]**United States v. Daigle**, 63 F.3d 346 (5th Cir. 1995) (citations omitted). See also **United States v. Miles**, 10 F.3d 1135 (5th Cir. 1993).

[5]This was the clear implication from the judge's statement that, "[r]ight now he's looking at five years minimum and in about 30 minutes, he's going to be looking at ten years minimum. That's all we know for sure. He's going to get the higher of the mandatory minimums under the guidelines."

[6]**Miles**, 10 F.3d 1135 ("Indeed, the pressure inherent in judicial participation would seem to be reason enough to reverse a conviction when the defendant accedes to the plea

The government argues that even if the court exerted pressure on Rodriguez, the judge did not "participate" in the plea negotiations. Participation in the Rule 11 sense, the government would have us believe, is limited to the several discrete categories of factual circumstances where the courts have previously found it, namely cases where the court injected terms into the agreement,[7] changed the terms of the agreement,[8] or discussed probable sentences.[9] We reject such a narrow view. Rule 11 and its interpretive case law unmistakably prohibit all forms of participation. In **Miles** we noted that judicial involvement in the plea negotiation process is to be strictly limited to rejection of the agreement and an explanation of the rejection.[10] Even if we were to limit the scope of this rule to particular classes, the class of cases in which a defendant is pressured by a judge to accept a plea agreement would certainly be among them, for this is the root evil that Rule 11 is designed to combat.[11]

suggested by the district court.")

[7]**United States v. Barrett**, 982 F.2d 193 (6th Cir. 1992).

[8]**Miles,** 10 F.3d 1135.

[9]**Daigle**, 63 F.3d 346.

[10]**Miles**, 10 F.3d 1135.

[11]**Barrett**, 982 F.2d at 194 ("The primary reason for Rule 11 is that a judge's participation in plea negotiations is inherently coercive"); **United States v. Bruce**, 976 F.2d 552, 558 (9th Cir. 1992) ("judicial involvement in plea negotiations inevitably carries with

Next, the government argues that the judge's comments did not violate Rule 11 because they were made in open court after a plea agreement had been reached. This is factually incorrect. An agreement had not been reached between Rodriguez and the government. Rodriguez had not consented to the agreement in court and had not yet entered a plea of guilty. The cited portions of the transcript from the guilty plea hearing reflect that Rodriguez was undecided as to whether he wanted to accept the plea agreement negotiated by his attorney. At the time, the negotiated plea was merely a proposed agreement. In addition, **Miles** rejected the notion that a judge has a free hand to participate in plea negotiations once a proposed agreement has been disclosed in open court. Appropriate discussion of a plea agreement properly presented to the judge is limited to exploration of the agreement in order to determine whether it is voluntary and just.[12] Simply stated, Rule 11 does not allow a defendant to be cajoled into accepting a plea package brokered by the government and counsel for the defendant.

---

it the high and unacceptable risk of coercing a defendant to accept the proposed agreement").

[12]The government attempts to draw support from **United States v. Crowell**, 60 F.3d 199 (5th Cir. 1995). In fact, **Crowell** was decided based on precisely the same conclusions we draw here. In **Crowell**, we held first that the judge was permitted to comment on an agreement that had been accepted by the defendant and pursuant to which a guilty plea had been entered, but that he was not permitted to comment on a subsequent agreement before it became final. We then held that the judge's comments with respect to the final agreement, because they were limited to an evaluation of the agreement, did not violate Rule 11.

Under Rule 11(h), all allegations of Rule 11 deficiencies must be reviewed for harmless error.[13]  A Rule 11 error is harmless unless it was a "material factor affecting the defendant's decision to plead guilty."[14]  We have previously stated, however, that it is difficult to imagine a situation in which the court would find a judge's participation in the plea negotiation process to be harmless given the inherent pressure placed on the defendant.[15]  Further, harmless error review in this context is "necessarily heightened by the alacrity with which this court and others have upheld the prohibition against judicial participation in plea negotiations."[16]  The judge *à quo*, through participation and the particular comments directed to Rodriguez, exerted pressure on him to accept the plea agreement.  We do not and cannot know whether Rodriguez would have accepted the plea agreement absent

---

[13]**United States v. Johnson**, 1 F.3d 296 (5th Cir. 1993) (en banc).

[14]**Daigle**, 63 F.3d at 349.

[15]**Miles**, 10 F.3d 1135.  The government argues that the error in **Miles** was found not to be harmless only because the court was unable to discern what agreement the defendant would have made had the court not participated.  Because Rodriguez had already negotiated a plea with the government, the argument continues, we know exactly what agreement would have resulted in this case.  But the government ignores what we do not know - whether Rodriguez would have entered the agreement at all absent the judge's involvement.  This argument is merely a restatement of the government's argument that only certain types of participation are "participation" in the Rule 11 sense.  Here the government suggests that the error is harmless because the terms of the agreement were not altered.  As previously noted, however, Rule 11 applies to all forms of participation.

[16]**Miles**, 10 F.3d at 1141.

participation by the court. We cannot, therefore, conclude that the error was harmless.

In reaching this conclusion, we may not consider the mitigating effect of the corrective action taken by the judge in recessing the proceedings so that Rodriguez could speak to his attorney. "Rule 11 is intended totally to eliminate the pressures emanating from judicial involvement in the plea bargaining process...."[17] Once the judge placed pressures on Rodriguez, their impact could not be so readily alleviated. The clear implication of the judge's statements at the pretrial hearing was that the judge desired a plea. It is reasonable to doubt that any amount of explanation from Rodriguez's attorney could have cured the impression likely left in Rodriguez's mind that "refusal to accept the judge's preferred disposition would be punished."[18] In short, we must conclude that the coercion that results from judicial participation so corrodes the plea bargaining process that no amount of corrective procedures may neutralize it.

For these reasons, Rodriguez's conviction and judgment must be vacated and the case remanded to the district court with instructions that Rodriguez be allowed to withdraw his guilty plea. The chief district judge is directed to reassign this

---

[17]**United States v. Werker**, 535 F.2d 198 (2nd Cir. 1976).

[18]**Barrett**, 982 F.2d at 194.

case.