United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 19, 2007**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals
for the Fifth Circuit*

No. 05-30163

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DEREK WASHINGTON,

Defendant–Appellant.

No. 05-30285

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

DANNY DANIELS,

Defendant–Appellant.

Appeals from the United States District Court
for the Western District of Louisiana
No. 5:04-CR-50045-2
No. 5:04-CR-50045-3

Before SMITH, GARZA and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

The defendants in this case, Derek Washington and Danny Daniels, pleaded guilty to conspiring to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. In this consolidated appeal, Daniels challenges his conviction and both defendants challenge their sentences. For the reasons that follow, the conviction and sentences are affirmed.

## I

Derek Washington pleaded guilty to conspiring to possess with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The factual basis for Washington's plea established his involvement in an operation involving more than 4,000 pounds of marijuana, which were transported from Dallas to Shreveport. Washington's role was to store the marijuana at his property in Shreveport.

The sentencing proceeding took place in February of 2005, after the Supreme Court decided *United States v. Booker*.[1] Washington was sentenced to 108 month's imprisonment, the high end of the advisory federal Sentencing Guidelines (U.S.S.G.) range. On appeal, Washington contends that his sentence should have been reduced under sections 5C1.2 and 3B1.2 of the Sentencing Guidelines and that his sentence is unreasonable.

---

[1]543 U.S. 220 (2005).

# A

Even after *Booker*, the district court's interpretation of the Sentencing Guidelines is reviewed *de novo* and its fact findings are reviewed for clear error.[2] In this case, the district court calculated Washington's sentence without awarding a 2-point reduction under U.S.S.G. §§ 2D1.1(b)(7) and 5C1.2(a). Section 5C1.2(a) requires, among other things, that the defendant did not "possess a firearm . . . in connection with the offense" and "truthfully provided to the Government all information and evidence the defendant has concerning the offense . . . ."[3] Because Washington failed to meet this latter requirement, in refusing to cooperate fully and provide information to the government, we need not address the firearm-possession requirement.

During the sentencing hearing, the government stated that Washington had refused to cooperate in its investigation of others and that Washington "never told us what role he had. He never told us whether or not he used the guns for his drug business. He never told us how much he got paid by the pound, whether it was $15 to store it or $400 a load." In response, Washington asserted that his lack of cooperation was based in part on his fear of reprisal, and he maintains on appeal that fear of reprisal justified his conduct, entitling him to the 2-point reduction.

---

[2]*United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006), *pet. for cert. filed* (U.S. May 18, 2006) (No. 05-11144).

[3]UNITED STATES SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 5C1.2(a)(2), (5) (2004).

3

This court has not addressed this precise issue,[4] but eight other courts of appeals have considered the argument, and all have rejected it.[5] As the Second Circuit noted, "The Sentencing Commission evidently contemplates that risk of injury to a defendant or his family will not excuse withholding information, because such a risk is explicitly identified as a factor to be considered in determining the extent of a cooperation departure."[6] As the First Circuit stated, "Defendants often have reasons, such as loyalty to a confederate or fear of retribution, for not wanting to make full disclosure. But full disclosure is the price that Congress has attached to relief under the statute, and the burden remains on the defendant to prove his entitlement."[7] For these reasons, other courts of appeals have decided against "creating a fear-of-consequences exception to the safety valve provision."[8] Because Washington presents no persuasive reason for creating a fear-of-consequences exception in this case, the district court did not err in refusing to grant the 2-point reduction.

---

[4] *Cf. United States v. Stewart*, 93 F.3d 189, 195-96 (5th Cir. 1996) (rejecting the defendant's argument that U.S.S.G. § 5C1.2 was unconstitutional as applied to her because she could only meet the requirement by "subject[ing] herself and her family to violent retaliation").

[5] *See United States v. Tang*, 214 F.3d 365, 370-71 (2d Cir. 2000); *United States v. Warren*, 338 F.3d 258, 263 n.3 (3d Cir. 2003); *United States v. Salgado*, 94 Fed. Appx. 142, 144 (4th Cir. 2004); *United States v. Gilliam*, 127 Fed. Appx. 820, 823 (6th Cir.), *cert. denied*, 126 S. Ct. 203 (2005); *United States v. Martinez*, 301 F.3d 860, 866 (7th Cir. 2002); *United States v. Trepagnier*, 168 F.3d 496 (8th Cir. 1998) (unpublished); *United States v. Carrizales*, 102 Fed. Appx. 628, 629-30 (9th Cir. 2004); *United States v. Mancinni-Cantu*, 61 Fed. Appx. 533, 534-35 (10th Cir. 2003).

[6] *Tang*, 214 F.3d at 371 (citing U.S.S.G. § 5K1.1(a)(4)).

[7] *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996).

[8] *See, e.g., Tang*, 214 F.3d at 371.

4

**B**

Washington also contends he should have received a mitigating-role reduction under U.S.S.G. § 3B1.2 because his only involvement in the conspiracy was storing the drugs. Because this issue was not raised in the district court, the plain-error rule applies.[9]  The district court did not err in refusing to grant the mitigating-role reduction. Washington was not charged or sentenced based on some larger conspiracy involving more drugs than he stored; he was only charged and sentenced based on the drugs stored on his property. Accordingly, he is not entitled to a mitigating-role reduction under section 3B1.2.[10]

**C**

Washington asserts his 108-month sentence is unreasonable because (1) it was imposed at the high end, as opposed to the middle, of the advisory Guidelines range; and (2) the district court relied "almost entirely on the guideline range and the quantity of drugs" and failed to consider his character and history.  Following *Booker*, a sentence "is reviewed for 'unreasonableness' with regard to the statutory sentencing factors enumerated in [18

---

[9]*See United States v. Medina-Anicacio*, 325 F.3d 638, 647 (5th Cir. 2003).

[10]*See United States v. Garcia*, 242 F.3d 593, 598-99 (5th Cir. 2001) (the defendant was not entitled to a mitigating role reduction because he was sentenced based only on his direct involvement, which was storing drugs on his property); *United States v. Moya*, 108 Fed. Appx. 930, 931 (5th Cir. 2004) (same), *cert. denied*, 543 U.S. 1080 (2005); *United States v. Cazares-Alvarado*, 101 Fed. Appx. 971, 971 (5th Cir. 2004) (the defendant was not entitled to a mitigating role instruction because he constructed a hidden compartment in which he concealed the large amount of drugs for which he was charged); *United States v. Turincio*, 78 Fed. Appx. 344, 347-48 (5th Cir. 2003) (the defendant was not entitled to a mitigating role reduction because he was not charged with participating in a larger conspiracy but was sentenced based only on use of his residence to store drugs).

5

U.S.C. §] 3553(a)."[11] A sentence imposed within a properly calculated advisory Sentencing Guidelines range is afforded a rebuttable presumption of reasonableness.[12]

A district court is not required to give "a checklist recitation of the section 3553(a) factors."[13] "'If the sentencing judge exercises [his or] her discretion to impose a sentence within a properly calculated Guideline range, . . . we will infer that the judge has considered all the factors for a fair sentence set forth in the Guidelines.'"[14] In this case, the record supports the inference that the district court considered the relevant factors. During the sentencing proceeding, Washington's history and characteristics were discussed, including his family life, work history, and completion of self-help programs. The nature and characteristics of the offense were also discussed. The district court noted that Washington stored over 4,300 pounds of marijuana on his property. As the district court stated, by thus participating in the conspiracy, Washington became "a very big drug dealer." Based on these facts, Washington was sentenced at the highest end of the advisory Guidelines range. Washington has presented no evidence rebutting the presumption of reasonableness that attaches to his sentence. Therefore, his sentence is affirmed.

---

[11]*United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006) (quoting *United States v. Booker*, 543 U.S. 220, 261 (2005)), *pet. for cert. filed* (U.S. May 18, 2006) (No. 05-11144).

[12]*United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006).

[13]*Id.*

[14]*United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006) (quoting *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005)).

## II

Danny Daniels also pleaded guilty to conspiring to possess with intent to distribute 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Six weeks after he pleaded guilty, Daniels filed a motion to withdraw that plea. Daniels' motion was opposed by the government and denied by the district court, which did not hold a hearing on the matter.

The sentencing proceeding was held in February of 2005, after the Supreme Court decided *Booker*[15] but before this court published *United States v. Mares*.[16] In determining Daniels' sentence, the district court discussed the factors set forth in 18 U.S.C. § 3553(a) and decided to impose a sentence within the advisory Sentencing Guidelines range of 188 to 235 months. The district court made fact findings based on information in the presentence report (PSR). Daniels objected, largely because the information in the PSR was neither admitted by him nor supported by evidence submitted by the government. Daniels also objected to the district court's application of the career-offender enhancement in U.S.S.G. § 4B1.1, arguing that his deferred adjudication was not a prior conviction. Daniels' objections were overruled.

Daniels was sentenced to imprisonment for 235 months. On appeal, Daniels challenges the voluntariness of his guilty plea, the denial of his motion to withdraw his guilty

---

[15]543 U.S. 220 (2005).

[16]402 F.3d at 511.

7

plea, the career-offender enhancement, the fact findings at sentencing, and the allegedly mandatory application of the Sentencing Guidelines.

## A

The validity of a guilty plea is reviewed *de novo*.[17] To be valid, a guilty plea must be voluntary, knowing and intelligent.[18] A plea is voluntary if it "'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'"[19] When determining whether a plea is voluntary, this court considers all relevant circumstances and examines whether the conditions for a valid plea have been met.[20] The conditions for a valid plea require, among other things, that the defendant have notice of the charges against him, understand the constitutional protections waived, and have access to the advice of competent counsel.[21] Under Federal Rule of Criminal Procedure 11, district courts must address defendants in open court and determine that their pleas are voluntary.[22] However, the district court must not coerce the defendant into pleading guilty.[23]

---

[17]*United States v. Reasor*, 418 F.3d 466, 478 (5th Cir. 2005).

[18]*United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).

[19]*Matthew v. Johnson*, 201 F.3d 353, 364 (5th Cir. 2000) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)) (internal quotation marks omitted).

[20]*Id.* at 364-65.

[21]*Id.* at 365.

[22]FED. R. CRIM. P. 11(b)(2).

[23]*Cf. United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir. 1999) (noting that Federal Rule of Criminal Procedure 11 prohibits courts from participating in plea negotiations, in part to lessen the likelihood of judicial coercion of a guilty plea, regardless of whether the coercion would actually

Daniels argues that his guilty plea was involuntary, claiming he was denied access to counsel and pressured into pleading guilty. The record reveals otherwise. The district court's attentiveness led Daniels to reveal his uncertainty about pleading guilty. After learning that Daniels was uncertain about pleading guilty, the district court suggested he go to trial, offered to set a trial date, allowed Daniels to confer with counsel until counsel announced "ready," explained the benefits offered in the plea agreement, and concluded, "If you have a serious problem, we ought to stop and go to trial." After Daniels conferred with his attorney, Daniels repeatedly assured the district court that he wanted to plead guilty. When, as here, a defendant equivocates about a plea, the district court may accept the plea if, after sufficient time to consult with counsel, the defendant announces he is ready to plead guilty and his waiver is knowing and voluntary.[24]

Moreover, Daniels' statements that his plea was knowing and voluntary and that he understood the rights he was waiving "create a presumption that in fact the plea is valid."[25] This presumption has not been overcome. Unlike the defendant in *United States v.*

---

render the plea involuntary); FED. R. CRIM. P. 11(c)(1) ("An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions.").

[24]*Cf. United States v. Woolley*, 123 F.3d 627, 632-34 (7th Cir. 1997) (holding that the defendant voluntarily entered into a guilty plea and an appeal waiver when the court, after learning that the defendant had not discussed the appeal waiver with counsel, took a brief recess and then asked the defendant whether she understood the appeal waiver and the terms and ramifications of the sentence imposed).

[25]*See Matthew*, 201 F.3d at 366.

*Rodriguez*,[26] Daniels never asked for more time to make his decision, and he was counseled to go to trial if he had serious concerns. Daniels faced a difficult decision, but with the assistance of counsel, he voluntarily resolved to plead guilty.

## B

Daniels contends that the district court erred when, without holding a hearing, it rejected his motion to withdraw his guilty plea. We review the district court's decision not to hold an evidentiary hearing for abuse of discretion.[27] We also review the denial of Daniels' motion to withdraw his guilty plea for abuse of discretion.[28]

"A defendant does not have an absolute right to withdraw [his] guilty plea."[29] When requesting withdrawal before sentencing, the defendant must show "a fair and just reason" for the request.[30] When determining whether a fair and just reason has been shown, a court considers the factors set forth in *United States v. Carr*.[31] The factors include whether (1) the defendant has asserted his innocence, (2) the government would be prejudiced, (3) the defendant delayed in requesting the withdrawal, (4) the court would be substantially

---

[26]197 F.3d at 157-59 (vacating the defendant's guilty plea because the district court impermissibly affected the plea negotiations by refusing the defendant's repeated requests for more time before entering his plea, indicating that the defendant would be found guilty if he chose to go to trial, and asking the defendant whether he was "sure" he wanted to go to trial).

[27]*United States v. Powell*, 354 F.3d 362, 370 (5th Cir. 2003).

[28]*See id.*

[29]*Id.*

[30]FED. R. CRIM. P. 11(d)(2)(B); *Powell*, 354 F.3d at 370.

[31]740 F.2d 339, 343-44 (5th Cir. 1984).

inconvenienced, (5) the close assistance of counsel was available, (6) the plea was knowing and voluntary, (7) the withdrawal would waste judicial resources, and "as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion."[32]  If, applying these factors, a defendant has alleged facts that would justify relief, a court must hold an evidentiary hearing on the matter.[33]

In this case, the district court did not abuse its discretion when, without holding a hearing, it denied Daniels' motion to withdraw his guilty plea.  The only justification for Daniels' motion was that "after due consideration of the Government's allegations and relevant evidence; and, additional time to confer with his Counsel, [the defendant] sincerely believes that it was an error in his judgment to plead guilty."  The motion gave no further justification and failed to cite any of the *Carr* factors.  "'[A] mere change of mind is insufficient to permit the withdrawal of a guilty plea before sentencing . . . .'"[34]  Withdrawal is permitted for pleas unknowingly made; "[t]he purpose is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty."[35]

---

[32]*Id.* (footnotes omitted).

[33]*Powell*, 354 F.3d at 370.

[34]*United States v. Glinsey*, 209 F.3d 386, 397 (5th Cir. 2000) (quoting *United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir.1990)) (alteration in original).

[35]*Carr*, 740 F.2d at 345.

In this case, Daniels' plea was knowing and voluntary. Daniels did not assert his innocence, delayed several weeks before seeking to withdraw his plea, and entered his plea with the assistance of counsel. Under these circumstances, the district court did not abuse its discretion by denying the motion without holding a hearing.[36]

As Daniels points out, the district court's order did not analyze the *Carr* factors. The order merely noted that no legal or factual basis had been presented "that would satisfy the standard set forth in United States v. Clark, 931 F.2d 292, 294 (5th Cir. 1991)." The standard referenced in *Clark* is the same standard set forth in *Carr*. Thus, the district court applied the correct standard and reached an appropriate result. Nothing more was required. When this court enumerated the *Carr* factors, it "did not intend to require the district court to make a specific finding as to each of the seven factors every time a defendant requests to withdraw a guilty plea."[37] Moreover, a defendant cannot fail to invoke any of the *Carr*

---

[36]*See United States v. Thomas*, 13 F.3d 151, 153 (5th Cir. 1994) (holding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea because the defendant made pretextual claims of innocence, waited six weeks before seeking withdrawal, was represented by adequate counsel, and made his plea knowingly and voluntarily); *United States v. Badger*, 925 F.2d 101, 104 (5th Cir. 1991) (holding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea because the defendant made his plea knowingly and voluntarily, was effectively represented by counsel, did not assert his innocence, and waited three weeks before requesting withdrawal); *Carr*, 740 F.2d at 345-46 (holding that the district court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea because, even though the defendant asserted his innocence, he waited 22 days to request withdrawal, had no valid excuse for the delay, was assisted by highly effective counsel, would have substantially inconvenienced the court and wasted judicial resources, and made his plea knowingly and voluntarily).

[37]*Badger*, 925 F.2d at 104; *see also Powell*, 354 F.3d at 367, 370-71 (upholding an order that, without *any* explanation, denied a motion to withdraw a guilty plea).

12

factors in support of his motion and then argue "that the district court abused its discretion by failing to consider arguments that he had the burden to raise."[38] For these reasons, the order denying Daniels' motion to withdraw his guilty plea is affirmed.

## C

As noted above, even after *Booker*, the district court's interpretation of the Sentencing Guidelines is reviewed *de novo* and the district court's fact findings are reviewed for clear error.[39] Daniels challenges, on several grounds, the district court's determination that a Texas deferred adjudication is a "prior felony conviction" for purposes of the career-offender enhancement in U.S.S.G. § 4B1.1(a). Section 4B1.1(a) provides:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant *has at least two prior felony convictions* of either a crime of violence or a controlled substance offense.[40]

First Daniels argues that a Texas deferred adjudication does not constitute a "conviction" for purposes of section 4B1.1(a). This argument is foreclosed by *United States v. Joshua*, in which this court held that a deferred adjudication is a conviction for purposes of section 4B1.1.[41] Daniels contends that *Joshua* is no longer binding and was incorrectly

---

[38]*Badger*, 925 F.2d at 104.

[39]*United States v. Duhon*, 440 F.3d 711, 714 (5th Cir. 2006), *pet. for cert. filed* (U.S. May 18, 2006) (No. 05-11144).

[40]U.S.S.G. § 4B1.1(a) (2003) (emphasis added).

[41]305 F.3d 352, 352-53 (5th Cir. 2002), *cert. denied*, 126 S. Ct. 1393 (2006).

decided in light of the Texas Court of Criminal Appeals' intervening decision in *Taylor v. State*, which observed that in a deferred adjudication proceeding, there is no finding of guilt and no final conviction.[42] This was not a new pronouncement by the Texas court. It relied upon its prior decisions, which pre-dated *Joshua*. The holding in *Taylor* was narrow. The trial court had imposed a fine in an order deferring adjudication, and the defendant did not pay it. When the defendant's guilt was subsequently adjudicated, the trial court did not orally pronounce a fine as part of the defendant's sentence in the defendant's presence. On appeal, the Texas court held that the requirement of an oral pronouncement applied in these circumstances.[43] The court reasoned that "when guilt is adjudicated, the order adjudicating guilt sets aside the order deferring adjudication, including the previously imposed fine."[44]

None of the reasons that led this court to conclude in *Joshua* that a Texas deferred adjudication is a conviction within the meaning of section 4B1.1 were undercut in *Taylor*.[45] Indeed, in *Taylor* the Texas court reiterated that a "successfully completed deferred adjudication [is] admissible at [the] punishment phase" in a subsequent trial under Texas

---

[42] 131 S.W.3d 497, 500 (Tex. Crim. App. 2004).

[43] *Id.* at 498.

[44] *Id.* at 502.

[45] *But see Caldwell v. Quarterman*, 127 S. Ct. 431, 432 (2006) (STEVENS, J., statement respecting denial of petition for certiorari) (concluding that "[a]n order of deferred adjudication probation is not a conviction, and it is therefore not a 'judgment' under Texas law" (citing *Davis v. State*, 968 S.W.2d 368, 371 (Tex. Crim. App. 1998)).

law,[46] citing TEX. CODE CRIM. PROC. art. 42.12, § 5(c)(1), and that such an adjudication is "available for enhancement of punishment in certain circumstances,"[47] citing TEX. PENAL CODE § 12.42(g). The Texas court also noted that a deferred adjudication is appealable at the time it is granted.[48]

Daniels' second and third grounds attacking the career offender enhancement under section 4B1.1(a) are that the district court erred in relying on the PSR's characterization of his Texas deferred adjudication as a conviction and that the district court improperly relied on documents regarding that adjudication that were not among the types of evidence listed in *Shepard v. United States*.[49] These contentions have no merit.

The PSR reflects that Daniels received deferred adjudication of the charge of aggravated assault with a deadly weapon. He does not contest that he in fact received deferred adjudication for this offense, nor does he contest that the charged offense is a crime of violence. In this court he admits, as he did in the district court, the historical fact that he

---

[46]*Taylor*, 131 S.W.3d at 500 n.13.

[47]*Id.*

[48]*See id*. at 502; *see also Caldwell v. Dretke*, 429 F.3d 521, 528 (5th Cir. 2005) (noting that under Texas law, a defendant "may appeal issues relating to the original plea proceedings when the deferred adjudication community supervision is first imposed" and may only raise issues relating to the conviction, such as evidentiary supervision, when community supervision is originally imposed) (citing *Manuel v. State*, 994 S.W.2d 658, 661-62 (Tex. Crim. App. 1999)), *cert. denied*, 127 S. Ct. 431, *and cert. denied*, 127 S. Ct. 548 (2006).

[49]544 U.S. 13 (2005) (holding that a district court could not look at police reports to determine whether a defendant was previously convicted of generic burglary for purposes of the Armed Career Criminal Act, 18 U.S.C. § 924(e)).

15

received deferred adjudication for this crime of violence. He argues only that the district court cannot rely on the PSR's characterization of the offense as a "conviction" and that the district court improperly examined documents or pleadings not shown to him or his counsel and not made part of the record to determine if he actually pleaded "guilty" in the deferred adjudication proceedings.

The content of the challenged documents or pleadings is irrelevant. To obtain a deferred adjudication under Texas law, Daniels must have pleaded guilty or nolo contendere.[50] Even if Daniels pleaded nolo contendere, under *Joshua* the deferred adjudication constitutes a conviction for purposes of section 4B1.1.[51] Therefore, the district court did not err in treating Daniels' deferred adjudication as a conviction. The district court did not have to look further than the facts admitted by Daniels and Texas law regarding his deferred adjudication to determine that it was a "conviction."

## D

Following *Booker*, a district court determines the applicable advisory Sentencing Guidelines range in the same manner as before, finding "by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts

---

[50]*See* TEX. CODE CRIM. PROC. art. 42.12 § 5(a) ("[W]hen in the judge's opinion the best interest of society and the defendant will be served, the judge may, *after receiving a plea of guilty or plea of nolo contendere*, hearing the evidence, and finding that it substantiates the defendant's guilt, defer further proceedings without entering an adjudication of guilt, and place the defendant on community supervision." (emphasis added)).

[51]*United States v. Joshua*, 305 F.3d 352, 352-53 (5th Cir. 2002) (holding that "a *nolo contendere* plea to robbery successfully discharged by a deferred adjudication" is a conviction for purposes of U.S.S.G. § 4B1.1), *cert. denied*, 126 S. Ct. 1393 (2006).

relevant to the determination of a non-Guidelines sentence."[52] Daniels alleges the district court erroneously made fact findings based on information not admitted by him nor supported by evidence submitted by the government. Post *Booker*, the district court did not err in making such findings.[53] The district court properly determined facts relevant to sentencing, and the findings were based on information contained in the presentence report (PSR). "As a general rule, information in the pre-sentence report is presumed reliable and may be adopted by the district court without further inquiry if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable."[54] Daniels does not assert that information in the PSR was incorrect or unreliable. Therefore, his objection fails.

## E

Post *Booker/Fanfan*, a district court's sentencing discretion must be guided by the considerations set forth in 18 U.S.C. § 3553(a).[55] Daniels contends that even though he was sentenced post *Booker/Fanfan*, the district court erroneously treated the Sentencing Guidelines as mandatory. The evidence suggests otherwise. During the sentencing

---

[52]*United States v. Mares*, 402 F.3d 511, 519 (5th Cir.), *cert. denied*, 126 S. Ct. 43 (2005).

[53]*See United States v. Duhon*, 440 F.3d 711, 715-16 (5th Cir. 2006), *pet. for cert. filed* (U.S. May 18, 2006) (No. 05-11144); *United States v. Alonzo*, 435 F.3d 551, 553 (5th Cir. 2006); *Mares*, 402 F.3d at 519.

[54]*United States v. Carbajal*, 290 F.3d 277, 287 (5th Cir. 2002) (internal quotation marks omitted).

[55]*United States v. Smith*, 440 F.3d 704, 706 (5th Cir. 2006).

17

proceeding, the district court discussed *Booker* and its implications and considered the factors in 18 U.S.C. § 3553(a). Among other things, the district court discussed the circumstances surrounding Daniels' offense, noting the "very large quantity of marijuana involved," Daniels' "heck of a big narcotics racket," and Daniels' "role in this as the leader." The district court concluded that Daniels "deserves a lengthy sentence" and imposed imprisonment for 235 months, the high end of the advisory Guidelines range.

The district court chose a sentence within the advisory Sentencing Guidelines range. In doing so, the district court did not treat the Guidelines as mandatory. Instead, the district court implicitly recognized that it could deviate from the Guidelines, but based on the facts before it, decided not to do so. The district court did not commit *Fanfan* error, and no other basis has been asserted for finding Daniels' sentence unreasonable. Therefore, the sentence is affirmed.[56]

The district court's judgments are AFFIRMED.

---

[56]*See id.* at 707 (noting that post-*Booker* a sentence imposed within a properly calculated Guidelines range is afforded a rebuttable presumption of reasonableness).