# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-50483

United States Court of Appeals
Fifth Circuit

**FILED**
February 12, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

PETER VICTOR AYIKA,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:11-CR-2126-1

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:*

Peter Victor Ayika, acting pro se, appeals his conviction and sentence for health care fraud.  Ayika alleges, among other errors, that the district court improperly participated in plea negotiations.  We agree and accordingly vacate his conviction.

**I**

In April 2011, a grand jury returned a two-count indictment charging Ayika, a licensed pharmacist, with unlawfully possessing and distributing

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50483

hydrocodone (the drug case).  In August 2011, Ayika was separately indicted on charges of health care fraud, mail fraud, and wire fraud (the fraud case). This latter indictment alleged that Ayika billed various healthcare benefit programs for medications that he never dispensed or distributed.

After a jury found him guilty on both counts in the drug case, Ayika indicated that he was interested in entering into a plea agreement in the fraud case.  He informed the court, however, that he was unwilling to concede that the amount involved in the fraud exceeded $1 million and would not plead guilty if doing so required him to make such a concession.  Subsequently, in February 2012, Ayika filed a Request for Change of Plea, stating that he wished to plead guilty and no longer contested the amount involved in the fraud.  Shortly thereafter, the district court held a status conference.  At the conference, counsel for Ayika informed the district court that the "instructions from my client have now changed," and that Ayika was unwilling to plead guilty if doing so meant agreeing to a forfeiture of the property identified in the indictment.  Counsel further indicated that he was unsure whether, under the law of the Fifth Circuit, his client could plead guilty and still contest the forfeiture.

In response to these statements, the district court stated that "in the Fifth Circuit, the forfeiture is solid as can be. . . .  [T]here's no question in my mind that the forfeiture the government pled was well pled."  The court further stated that "the best chance[] here, quite frankly, for him is the plea of guilty and the concurrent sentencing [of the drug and fraud cases]."  At a number of other points during the conference, the district court stated that it would sentence Ayika to a term of imprisonment below the guidelines range if he entered a guilty plea and did not contest the forfeiture sought by the Government.  The court made clear, however, that Ayika had the right to

2

proceed to trial and that the court did not "have any problem" with Ayika's choosing to exercise that right.  Toward the conclusion of the conference, the court told Ayika that pleading guilty "is your chance to cut your losses short." Counsel for Ayika did not object to these or any other statements made by the court.

The day after the conference Ayika executed a plea agreement with the Government.  He agreed to plead guilty to health care fraud and admit the forfeiture allegations in the indictment.  During the district court's colloquy with Ayika regarding his desire to plead guilty, Ayika stated that no one had forced, threatened, or coerced him to enter the plea.  After accepting Ayika's guilty plea, the district court sentenced Ayika to 63 months in prison for the fraud charge, 60 months in prison for count one in the drug case, and 170 months for count two in that case, all to run concurrently.  The district court also ordered restitution in the amount of $2,498,586.86, and forfeiture of property as indicated in the indictment and plea agreement.  The property forfeited included a parcel of real property, over $1,000,000 in specified bank accounts, more than $500,000 seized from other specified bank accounts, currency seized at specific locations, and two automobiles.

Ayika appealed the judgments in both cases.  A panel of this court affirmed the judgment in the drug case.[1]  We now consider Ayika's appeal of his sentence and conviction in the fraud case.  The Government does not contend that Ayika's waiver of the right "to appeal or collaterally attack any

---

[1] *See United States v. Ayika*, --- F. App'x ----, Nos. 11-51078, 12-50490, 2013 WL 5651389, at *1 (5th Cir. Oct. 17, 2013).

matter in connection with this prosecution and sentence, including the forfeiture" should be enforced.[2]

## II

Ayika's primary contention is that the district court participated in the plea negotiations in violation of Federal Rule of Criminal Procedure 11. As Ayika (who was represented by counsel at the time) failed to object to the district court's statements, our review is limited to plain error.[3] Plain error review, as the Supreme Court has explained, "involves four steps, or prongs."[4] First, the appellant must demonstrate that the district court committed an error.[5] "Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights."[6] Lastly, "if the above three prongs are satisfied, the court of appeals has the *discretion* to remedy the error—discretion which ought to be exercised only if the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[7] With this standard in mind, we consider Ayika's claim.

## III

Federal Rule of Criminal Procedure 11(c) provides that the Government may negotiate a plea agreement with a defendant's attorney or the defendant

---

[2] *See generally United States v. Alvarado-Casas*, 715 F.3d 945, 953 (5th Cir. 2013) (noting that defendant's "appeal waiver does not bar our review of his claims of Rule 11 error").

[3] *See United States v. Davila*, 133 S. Ct. 2139, 2147 (2013); *United States v. Vonn*, 535 U.S. 55, 59 (2002).

[4] *Puckett v. United States*, 556 U.S. 129, 135 (2009). *See, e.g., United States v. Hughes*, 726 F.3d 656, 659 (5th Cir. 2013).

[5] *Puckett*, 556 U.S. at 135.

[6] *Id.* (internal citations omitted).

[7] *Id.* at 135 (emphasis in original) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)) (internal alteration omitted).

when proceeding pro se, but that "[t]he court must not participate in these discussions."[8]   "We have characterized Rule 11's prohibition of judicial involvement as a 'bright line rule,' and 'an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process.'"[9] As we have explained on numerous occasions, "there are important reasons for the rule admitting no exceptions."[10]  "First, 'it serves to diminish the possibility of judicial coercion of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea.'"[11]   "Indeed," we have noted, "'pressure is inherent in *any* involvement by a judge in the plea negotiation process.'"[12]   Second, judicial involvement in plea negotiations "is likely to impair the trial court's impartiality," as "[t]he judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement . . . and may therefore resent the defendant who rejects his advice."[13]   Lastly, "a judge's 'participation in plea discussions creates a misleading impression of the judge's role in the proceedings.  As a result of his participation, the judge is no longer a judicial officer or neutral arbiter,'" but "'becomes or seems to become an advocate for the resolution he has suggested to the defendant.'"[14]

---

[8] FED. R. CRIM. P. 11(c)(1).

[9] *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013) (quoting *United States v. Rodriguez*, 197 F.3d 156, 158 (5th Cir. 1999) and *United States v. Adams*, 634 F.2d 830, 835 (5th Cir. Unit A 1981), respectively).

[10] *United States v. Daigle*, 63 F.3d 346, 348 (5th Cir. 1995); *see also Pena*, 720 F.3d at 570-71 (reiterating the reasons); *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993) (same).

[11] *Pena*, 720 F.3d at 570-71 (quoting *Miles*, 10 F.3d at 1139).

[12] *Id.* at 571 (emphasis in original) (quoting *Rodriguez*, 197 F.3d at 159).

[13] *Id.* (second alteration in original) (internal quotation marks and citation omitted).

[14] *Id.* (quoting *Miles*, 10 F.3d at 1139).

In light of these considerations, we have not hesitated to find a Rule 11 error even when the court's participation is minor and unintentional. In *United States v. Daigle*,[15] for instance, we held that the district court violated Rule 11 when it stated in an off-the-record conference that it "would most likely follow any sentence recommendation by the government."[16] Similarly, in *United States v. Rodriguez*,[17] we vacated a defendant's guilty plea because the district court stated that "[r]ight now [the defendant is] looking at five years minimum and in about 30 minutes [i.e. if he declines to plead guilty] he's going to be looking at ten years minimum."[18] We reasoned that such statements "indicated a belief that if [the defendant] opted for a trial, he likely would be found guilty."[19] And most recently, in *United States v. Pena*,[20] we held that a district court committed plain error when it suggested during a status conference that the defendant resolve separate litigation prior to entering a guilty plea, in part because "the district court's statements connote[d] the *possibility* that the court had already made a determination as to Pena's guilt in the instant offense and preferred a guilty plea."[21]

Against the backdrop of these precedents, the district court's comments during the status conference amounted to impermissible participation in the plea negotiations. As in *Daigle*, the district court told Ayika on multiple occasions that it would sentence him to a below-guidelines sentence if Ayika elected to plead guilty. Moreover, as in *Rodriguez* and *Pena*, the district court's

---

[15] 63 F.3d 346 (5th Cir. 1995).

[16] *Daigle*, 63 F.3d at 348-49.

[17] 197 F.3d 156 (5th Cir. 1999).

[18] *Rodriguez*, 197 F.3d at 158-60.

[19] *Id.* at 159.

[20] 720 F.3d 561 (5th Cir. 2013).

[21] *Pena*, 720 F.3d at 572 (emphasis in original).

No. 12-50483

statements that Ayika's "best chance" was to plead guilty and that doing so was his opportunity to "cut [his] losses short" suggested that the district court believed Ayika would be found guilty if he proceeded to trial.

The Government argues that this case is distinguishable from our precedents because the district court's statements were in open court. It further contends that this case is different because "the status conference was held in response to multiple motions by Ayika informing the court that he wanted to enter a guilty plea." These arguments are meritless. The Government does not explain why impermissible participation becomes permissible when it occurs on the record. Nor does the clear text of Rule 11 contain an exception for circumstances in which the defendant indicates he is interested in pleading guilty. Furthermore, we have previously held that the district court violated Rule 11 even though its statements were made on the record and after the defendant had executed a plea agreement.[22]

The Government asserts that there was no Rule 11 violation because the district court told Ayika at multiple junctures "that it was not opposed to conducting a trial." Although these potentially curative statements, as discussed further below, may pertain to the question of whether the district court's participation affected Ayika's decision to plead guilty, they are not relevant to the issue of whether the court impermissibly participated in the negotiations in the first instance.[23]

We conclude that the district court's comments ran afoul of Rule 11's absolute prohibition on judicial participation in plea negotiations. Moreover,

---

[22] *See United States v. Miles*, 10 F.3d 1135, 1138-40 (5th Cir. 1993); *see also Rodriguez*, 197 F.3d at 157-60 (holding that there was a violation of Rule 11 even though the district court's comments were made in open court after the defendant had negotiated a plea agreement).

[23] *See, e.g.*, *Pena*, 720 F.3d at 571-77.

in light of "our well-settled circuit law" on this issue and the substantial number of cases holding that far fewer and less assertive statements violated Rule 11, we hold that the district court's error was clear and obvious.[24]

## IV

Having determined that Ayika has satisfied the first two prongs of plain error review, we must assess whether the district court's statements affected his substantial rights.[25]  In recent years, the Supreme Court has clarified under what circumstances a violation of Rule 11 rises to this level.  The Court has held that a Rule 11 error only affects a defendant's substantial rights if there was "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."[26]  Specifically, a defendant claiming impermissible judicial participation must demonstrate that "it was reasonably probable that, but for the [district judge's] exhortations, [the defendant] would have exercised his right to go to trial."[27]  In engaging in this inquiry, we assess the record as a whole, not simply the colloquy between the court and the defendant.[28]  In addition, as the Supreme Court has noted, the "particular facts and circumstances matter," including the amount of time between the Rule 11 violation and the defendant's decision to plead guilty.[29]

Ayika asserts that he would not have entered a plea of guilty in the absence of the district court's participation because "the record shows that he

---

[24] *Id.* at 573.

[25] *Puckett v. United States*, 556 U.S. 129, 135 (2009); *United States v. Dominguez Benitez*, 542 U.S. 74, 81 (2004).

[26] *Dominguez Benitez*, 542 U.S. at 81-82 (internal quotation marks and alterations omitted).

[27] *United States v. Davila*, 133 S. Ct. 2139, 2150 (2013).

[28] *Id.*

[29] *Id.* at 2149.

was . . . not willing to accept the plea with the forfeiture contained in it." The record supports this contention. Although Ayika indicated on a number of occasions that he wished to plead guilty, he made it abundantly clear that he objected to the forfeiture allegations and that these objections made him reluctant to execute a plea agreement. In February 2012, for instance, Ayika, acting through counsel, filed a motion stating that "he wished to enter a guilty plea." However, he disputed the indictment's "allegation that the amount [of money] involved in the fraud was in excess of $1,000,000.00." Since he could not both plead guilty and contest the amount involved, Ayika moved the court to hold a bench trial. While Ayika subsequently informed the court that he "no longer wishe[d] to contest this amount," he again changed his mind prior to the status conference. As Ayika's counsel told the district court at the conference, Ayika "now says or feels that some of the stuff [the Government] want[s] to forfeit can't be actually legally forfeited." Thus, at the moment of the district court's comments, Ayika was, to quote his attorney, "back to square one." Nonetheless, the day after the status conference, Ayika executed the plea agreement that included the forfeiture terms.

Based on these facts, we find that there was a "reasonable probability that, but for the error, [Ayika] would not have entered the plea."[30] At the time of the status conference, Ayika was at best ambivalent about whether to enter into a plea agreement. He had vacillated as to whether he was willing to plead guilty if doing so meant conceding that the amount involved in the fraud exceeded $1 million. The day immediately after the district court's statements, Ayika was willing to sign the agreement. As both this court and the Supreme

---

[30] *Dominguez Benitez*, 542 U.S. at 76.

Court have noted, such "a temporal proximity . . . supports a finding of prejudice."[31]

The Government argues that the district court's statements did not affect Ayika's substantial rights because it was impossible for him to admit to health care fraud and retain possession of the proceeds of the fraud. But, as Ayika's pleadings before the district court and his counsel's statements make clear, Ayika understood that he could not plead guilty and contest the amount involved in the fraud. It was for this precise reason that he considered not pleading guilty. Had the district court refrained from telling Ayika that his "best chance" was to enter a guilty plea, there was a reasonable probability that Ayika would have chosen not to plead guilty.

The Government also asserts that the order of forfeiture did not affect Ayika's substantial rights because he would have had to forfeit the funds in any event as a result of the restitution order. It is true that Ayika's pro se brief states that he was opposed to a plea because of the inclusion of the forfeiture and fails to contain substantial discussion of restitution. As the Government knows, however, it is our duty to construe pro se briefs liberally so that a litigant will not suffer simply because he did not attend law school or find a suitable attorney.[32] Notwithstanding Ayika's focus on the term "forfeiture," his brief and the record make clear that his dispute did not concern the specific forfeiture allegation in the indictment, but the indictment's claim that the amount involved in the fraud exceeded $1 million. As one of Ayika's motions before the district court stated, "although he wished to enter a guilty plea, the

---

[31] *United States v. Pena*, 720 F.3d 561, 574 (5th Cir. 2013) (citing *Davila*, 133 S. Ct. at 2149); *see also Davila* 133 S. Ct. at 2149 (suggesting that a finding that a magistrate judge's impermissible participation affected the defendant's substantial rights would be likely if the defendant's "guilty plea followed soon after" the comments).

[32] *See Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis, Tenn.*, 706 F.2d 638, 640 n.1 (5th Cir. 1983).

No. 12-50483

government . . . has included in the indictment an allegation that the amount involved in the fraud was in excess of $1,000,000.00." Had Ayika not entered a plea of guilty, he would have been able to contest this allegation.

Lastly, the district court's statements that it was willing to hold a trial did not ameliorate the effect of the court's prior comments. As we have observed, "[o]nce the judge place[s] pressures on [a defendant], [the] impact [cannot] be so readily alleviated."[33] Thus, in *Pena*, we held that the district court's comments affected the defendant's substantial rights even though the court subsequently told the parties to disregard them because that "withdrawal" did not "alter Pena's perception of the court's desired disposition."[34] Likewise, in this case, the district court's statements that it was willing to hold a trial could not alter Ayika's perception that the court believed that he was guilty or that it would impose a harsher sentence as punishment if Ayika elected not to plead guilty.

Because there was thus a reasonable probability that but for the district court's comments, Ayika would not have entered into the plea agreement, we conclude that the Rule 11 error affected his substantial rights.

## V

As Ayika has demonstrated that the district court committed a clear error and that this error affected his substantial rights, we must consider the final element of plain error review. "The fourth prong of plain error asks whether the error affects 'the fairness, integrity, or public reputation of judicial proceedings' such that the appellate court should exercise its discretion to correct the error."[35] As we have previously noted, "we do not view the fourth

---

[33] *United States v. Rodriguez*, 197 F.3d 156, 160 (5th Cir. 1999).

[34] *Pena*, 720 F.3d at 575.

[35] *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

prong as automatic if the other prongs are met."[36]  Rather, we must determine that a failure to rectify the error would result in a "miscarriage of justice."[37] We conclude that the district court's error rises to this level.

At the time it drafted the prohibition on judicial participation in plea negotiations, the Advisory Committee recognized that "it [was] common practice for a judge to participate in plea discussions."[38]  Nevertheless, it recognized that there were many drawbacks to allowing this participation. Namely, judicial involvement "might lead the defendant to believe that he would not receive a fair trial" if he elected not to plead guilty.[39]  Moreover, "[s]uch involvement makes it difficult for a judge to objectively assess the voluntariness of the plea."[40]  The Advisory Committee recognized, "[t]he unequal positions of the judge and the accused, one with power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness."[41]  These concerns of objectivity, integrity, and fairness are the values we are tasked with preserving when determining whether to exercise our discretion on plain error review.

We conclude that the district court's comments, while unintentional, affected "the fairness, integrity, or public reputation of judicial proceedings."[42] By stating that pleading guilty was Ayika's "best chance," the district court strongly indicated that it thought Ayika would be found guilty if a trial occurred.  By encouraging Ayika to enter a guilty plea, the district court may

---

[36] *Id.*

[37] *Id.* (citing *United States v. Olano*, 507 U.S. 725, 736 (1993)).

[38] *See* FED. R. CRIM. P. 11 advisory committee's note (1974).

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *United States v. Olano*, 507 U.S. 725, 736 (1993) (internal quotation marks omitted).

have compromised its ability to assess whether Ayika's plea was voluntary. Lastly, by stating that this was Ayika's opportunity to "cut [his] losses short," the district court may have led Ayika to believe that the court would punish him if he chose to not to plead guilty.

The Government argues that the fourth prong is not met in this case because "Ayika's alleged harm centers on his property rights, not his liberty." This argument fails, as we have previously found plain error even when the error only concerned the payment of funds or the timing of such a payment.[43] Accordingly, "this case presents those exceptional circumstances that warrant reversal on plain error."[44]

* * *

For the foregoing reasons, we VACATE Ayika's guilty plea and REMAND for further proceedings before a different district judge. Because we take this action, we do not reach Ayika's other arguments challenging his conviction and sentence.

---

[43] *See United States v. Myers*, 198 F.3d 160, 169 (1999) (finding plain error when district court required defendant to pay restitution immediately even though he lacked the ability to do so).

[44] *United States v. Pena,* 720 F.3d 561, 576 (5th Cir. 2013).