PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-4491**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SAVINO BRAXTON,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Richard D. Bennett, District Judge. (1:09-cr-00478-RDB-1)

Argued: March 26, 2015          Decided: April 28, 2015

Before NIEMEYER, KING, and HARRIS, Circuit Judges.

Vacated and remanded by published opinion. Judge Harris wrote the opinion, in which Judge Niemeyer and Judge King joined.

**ARGUED**: Andrew Robert Szekely, LAW OFFICES OF ANDREW R. SZEKELY, LLC, Greenbelt, Maryland, for Appellant. John Francis Purcell, Jr., OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

PAMELA HARRIS, Circuit Judge:

For months, Savino Braxton ("Braxton") insisted on exercising his right to go to trial, despite the substantial mandatory minimum penalty he would face if convicted. On what would have been the first day of trial, however, Braxton reversed course and accepted the government's plea offer. Because the district court impermissibly participated in the discussions that led to Braxton's change of heart, we vacate and remand for further proceedings.

**I.**

Braxton was charged with possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a) (2012). Ordinarily, this charge carries a mandatory minimum penalty of ten years' imprisonment. 21 U.S.C. § 841(b)(1)(A) (2012). But where the defendant, like Braxton, has a prior felony drug conviction, the government may elect to file a prior felony information, effectively doubling the mandatory minimum to twenty years' imprisonment. See id.; 21 U.S.C. § 851(a) (2012).

In the fall of 2012, Braxton discussed the possibility of a guilty plea with his court-appointed counsel, Arcangelo Tuminelli ("Tuminelli"). During those discussions, Tuminelli expressed concern that if Braxton did not plead guilty, the

2

government might choose to file a prior felony information under § 851. Unswayed, Braxton refused to plead guilty and moved for the appointment of new counsel, complaining that Tuminelli was "not interested in taking the case to trial" and had "vehemently goad[ed] [him] to plead guilty." J.A. 36-37. During a hearing on that motion, the district court indicated that it did not "find it really to be a situation where [Braxton] should get substitute counsel," and Braxton agreed to withdraw his request. J.A. 112.

Meanwhile, on November 19, 2012, Tuminelli's fears were realized: The government indeed filed a prior felony information under § 851. As a result, Braxton faced a mandatory minimum penalty of twenty years' imprisonment if convicted after trial. At the time, he was fifty-five years old.

Trial was scheduled to begin on February 11, 2013. That morning, the district court memorialized for the record that Braxton had received and rejected a plea agreement formally offered by the government.[1] Under the terms of the rejected plea agreement, Braxton faced a minimum of ten years' imprisonment,

---

[1] Under Missouri v. Frye, 132 S. Ct. 1399 (2012), a defense counsel's failure to communicate a formal plea offer may constitute ineffective assistance of counsel. To guard against such claims, the Supreme Court has suggested that "formal offers . . . be made part of the record . . . before a trial on the merits, . . . to ensure that a defendant has been fully advised before those . . . proceedings commence." Id. at 1409.

3

and the government promised to ask for no more than fifteen years. In the words of the district court, the government had "essentially" offered to "withdraw the 851 notice" in exchange for a guilty plea. J.A. 237. On the record, Braxton confirmed that he understood the offer, and that he nevertheless wished to reject it and proceed to trial.

Immediately thereafter, Braxton orally requested that he be appointed new counsel or, in the alternative, that he be permitted to represent himself. The district court promptly denied both requests. First, the district court found that there was no need for new counsel because Braxton's conflict with Tuminelli was not "so great that it results in any lack of communication." J.A. 240. Next, the district court noted that Braxton's request to represent himself was being made literally "on the morning of trial" and therefore was "not timely." J.A. 252.

Although Braxton's requests for new counsel and self-representation already had been denied, discussion of Braxton's grievances against Tuminelli continued. At core, attorney and client disagreed about whether Braxton should accept the government's plea agreement or go to trial. Although Braxton admitted that he was "guilty" of possessing with intent to distribute some quantity of heroin, he nevertheless insisted on proceeding to trial to "test[] the validity of the weight of the

4

drugs." J.A. 253. Tuminelli, for his part, took the position that Braxton should have accepted the plea agreement.

Drawn into this dispute, the district court repeatedly spoke in favor of the plea agreement, opining that it would be best for Braxton to take the government's offer and forgo trial. The court told Braxton, "I am not favorably inclined towards having you go to trial and trigger a mandatory minimum of 20 years, as opposed to a plea offer that's down in the 10 to 15 year range in terms of years of your life." J.A. 265. In the court's words, Braxton was "hurting [his] own interest" by choosing to go to trial. J.A. 267.[2] Given the sentencing "scenario," the district court found Braxton's position difficult to comprehend, comparing the decision to go to trial to "put[ting] [your] head in a buzz saw that makes absolutely no sense." J.A. 272. At the conclusion of this first series of

---

[2] See also J.A. 267-68 (characterizing "going to trial and doubling a mandatory minimum" to twenty years as "just almost silly when [Braxton was] in a potential range of 10 to 15 years"); J.A. 268 (characterizing the plea agreement as a "far more sensible way to approach" the drug quantity question than going to trial); J.A. 271 (emphasizing that, if Braxton accepted the plea agreement, the court would not be "bound" by the twenty-year mandatory minimum triggered by the § 851 notice, and would therefore be "free to sentence [Braxton] to 10 years"); J.A. 276 (stating that Braxton's concern regarding quantity and sentencing was an issue that could "be addressed in another context" and "d[idn't] need to be addressed in terms of a jury trial, where [he] face[d] the potentiality of a 20-year minimum mandatory" and the court's "hands [would be] tied" with respect to a more lenient sentence).

5

remarks, the district court instructed Braxton "to talk to [his] lawyer" and ordered a ten-minute recess. J.A. 276. Thirty minutes later, the district court briefly reconvened in order to excuse the jury for lunch. At that time, the district court again advocated for the rejected plea agreement, declaring, "[A] defendant shouldn't put his head in a vice [sic] and face a catastrophic result just over a dispute over drug quantity. That's the point." J.A. 277.

During the forty-five-minute lunch recess that immediately followed, Braxton changed his mind and accepted the same plea agreement that he had rejected that morning. The district court conducted a Rule 11 colloquy as soon as it reconvened in the afternoon. Referring to that morning's discussion of the plea agreement, the district court explained that it had been motivated by concern "over [Braxton's] unwisely proceeding to trial before a jury." J.A. 284. At the same time, the district court asked Braxton whether he had "felt forced or threatened or pushed" to plead guilty. J.A. 285. Braxton replied, "No, sir." J.A. 285. Satisfied, the district court accepted Braxton's guilty plea and scheduled sentencing.

In May 2013, Braxton filed a pro se motion to withdraw his guilty plea on the basis of ineffective assistance of counsel. At his June 17, 2013, sentencing hearing, Braxton again asked to withdraw his guilty plea, this time arguing that his plea had

been involuntary. Braxton contended that he had been "eager to go to trial," but had been pressured to plead guilty by the district court. J.A. 329. The district court denied Braxton's request and sentenced him to eleven and one-half years, or 138 months, of imprisonment. Braxton timely appealed.

## II.

## A.

Under Federal Rule of Criminal Procedure 11(c)(1), "[a]n attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement." Courts, however, are expressly prohibited from "participat[ing] in these discussions." Id. This prohibition, added in 1974, was intended to eliminate the previously "common practice" of judicial participation in plea negotiations, United States v. Davila, 133 S. Ct. 2139, 2146 (2013) (quoting Advisory Committee's 1974 Note on Subd. (e)(1) of Fed. R. Crim. P. 11, 18 U.S.C.App., p. 1420 (1976 ed.)), and serves three principal interests. First, "it diminishes the possibility of judicial coercion of a guilty plea." United States v. Sanya, 774 F.3d 812, 815 (4th Cir. 2014) (quoting United States v. Bradley, 455 F.3d 453, 460 (4th Cir. 2006)). Second, "it protects against unfairness and partiality in the judicial process." Id. And finally, "it eliminates the misleading impression that the judge

7

is an advocate for the agreement rather than a neutral arbiter." Id.

We recently had occasion to apply these principles in United States v. Sanya, 774 F.3d 812 (4th Cir. 2014). In that case, we found that the district court committed plain error by "repeatedly intimat[ing] that a plea to the . . . charges was in [the defendant's] best interests" and "strongly suggest[ing] that [the defendant] would receive a more favorable sentence if he agreed to plead guilty." Id. at 816. Because these comments occurred "just five days" before the defendant changed his mind about going to trial and executed a plea agreement, we found that there was a "reasonable probability that, but for the error, he would not have entered the plea," and that the error had therefore affected his "substantial rights." Id. at 817-18 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)). Finally, we found that, in light of "the critical interests served by the prohibition" on judicial participation in plea discussions, our refusal to notice the error would "seriously affect the fairness, integrity or public reputation of judicial proceedings." Id. at 821 (quoting United States v. Olano, 507 U.S. 725, 736 (1993); Bradley, 455 F.3d at 463). On the basis of these findings, we concluded that the district court had committed reversible error. Id. at 821-22. Because

8

this case is on all fours with <u>Sanya</u>, we are compelled to find reversible error here as well.[3]

First, as in <u>Sanya</u>, the district court made repeated comments, doubtlessly well-intentioned, that nevertheless suggested that a plea would be in Braxton's best interest, and that Braxton would receive a more favorable sentence if he pleaded guilty. See <u>id.</u> at 816. The district court, for instance, baldly stated that it was "not favorably inclined" toward Braxton going to trial, J.A. 265, a course it described as "almost silly," J.A. 267-68, and compared to "put[ting] your head in a buzz saw," J.A. 272. The court also implied that a plea would benefit Braxton at sentencing, warning Braxton that while it would be "free to sentence [him] to 10 years" if he took the plea, J.A. 271, its "hands [would be] tied" by the twenty-year minimum if he rejected the plea and then lost at trial, J.A. 276. This advice, moreover, had the unfortunate effect of emphasizing for Braxton that the judge who was counseling him to accept a plea was the same judge who would be sentencing him, increasing the risk that Braxton would feel coerced to do as the judge advised. See <u>Sanya</u>, 774 F.3d at 821.

---

[3] Because we find that Braxton is able to satisfy the more stringent plain-error standard of review applied in <u>Sanya</u>, we need not decide whether the alleged Rule 11(c)(1) error in this case was properly preserved for review under the harmless-error standard.

9

This is not a case involving a single or even a few brief remarks by the court, or comments made only after a plea agreement already has been reached. See id. at 816; cf. United States v. Cannady, 283 F.3d 641, 644 (4th Cir. 2002) (finding no error where district court's comments were made after the plea agreement had been executed). Instead, as in Sanya, the court's commentary was extensive and persistent, and continued unabated throughout the morning session, again when the court reconvened to recess for lunch, and even during the afternoon plea colloquy itself. In Sanya, we found that such "repeated remarks clearly constitute judicial participation in plea discussions, and [that] the district court erred in engaging in them," even if it acted only with the best of intentions. 774 F.3d at 816. We reach the same conclusion here. We also find that the error was plain: As we held in Sanya, the rule against judicial participation in plea discussions is longstanding, and "the doctrine surrounding its interpretation is well-settled." Id. at 817; see also Bradley, 455 F.3d at 460 (Rule 11(c)(1) "clearly prohibits a court from participating in plea negotiations.").

Our reasoning in Sanya guides our analysis of the "substantial rights" inquiry in this case, as well. In this context, a defendant's substantial rights are affected if review of the "full record" reveals a "reasonable probability" that the

10

error led him to enter the plea.[4]  _Sanya_, 774 F.3d at 817 (quoting _Dominguez Benitez_, 542 U.S. at 83).  As in _Sanya_, our conclusion is driven largely by the timing of Braxton's decision to plead guilty:  It was only in the immediate aftermath of the district court's error — specifically, during the forty-five-minute lunch recess that followed the district court's admonition that Braxton "shouldn't put his head in a vice [sic] and face a catastrophic result . . . over drug quantity," J.A. 277 — that Braxton reconsidered his long held position and accepted the plea agreement.  This exceedingly "close temporal proximity weighs heavily in favor of finding that [Braxton's] decision to plead guilty was the result of the district court's involvement in the plea negotiations."  _Sanya_, 774 F.3d at 818 (finding standard met where defendant accepted plea within five days of violation); _see also_ _Davila_, 133 S. Ct. at 2149 (where "guilty plea follow[s] soon after" error, the error is more likely to be prejudicial).  Indeed, it is difficult to conceive

---

[4]  In its brief, the government asserts that "[i]n the context of a guilty plea, the defendant must demonstrate that he would not have pled guilty _but for_ the district court's error." Gov. Br. 44 (emphasis added).  That is incorrect.  As we explained in _Sanya_, "[t]he Supreme Court has clearly instructed that to establish a violation of substantial rights, a defendant need only demonstrate a 'reasonable probability' that the error led him to enter the plea," and a defendant "need not show that, 'but for' the court's error, he would have gone to trial."  774 F.3d at 819–20.

11

of any other factor that could have influenced Braxton during this small window of time.

Finally, as we observed in Sanya, plain error involving judicial participation in plea discussions "almost inevitably seriously affect[s] the fairness and integrity of judicial proceedings." 774 F.3d at 821 (quoting Bradley, 455 F.3d at 463). This case is no exception to the general rule. As in Sanya, the district court's exhortations in favor of pleading guilty were "repeated and direct" and "saturated the hearing." Id. That kind of sustained intervention on behalf of a plea agreement — and concomitant forfeiture of the right to trial — may reasonably be perceived "as inconsistent with the court's role as a neutral arbiter of justice," id. (quoting United States v. Baker, 489 F.3d 366, 375 (D.C. Cir. 2007)), undermining public confidence in the court. Accordingly, and after review of the entire record, we conclude that we must follow Sanya and notice the plain error in this case.

**B.**

The government does not question our holding in Sanya, arguing instead that Sanya and cases like it are distinguishable from this one. We are not persuaded by the government's various efforts to distinguish Sanya, and dispense with each below.

12

**1.**

The government argues that no error can have occurred in this case because Braxton stated during his Rule 11 colloquy that his plea was given voluntarily. We disagree. The very premise of the rule at issue is that "a judge's participation in plea negotiation is inherently coercive," creating an unacceptable risk that a defendant will enter an involuntary guilty plea in order to avoid offense to the court with the power to preside over his trial and determine his sentence. Bradley, 455 F.3d at 460 (quoting United States v. Barrett, 982 F.2d 193, 194 (6th Cir. 1992)). By itself, a defendant's mere statement that his plea was voluntary, made in response to questioning by the very same judge whose apparent preferences raised the specter of coercion in the first place, cannot dispel that concern. Cf. Baker, 489 F.3d at 376 (finding reversible error notwithstanding district court's "attempt[] to remedy its error during the plea colloquy").

Nor is there anything else about the plea colloquy here that obviates the Rule 11(c)(1) violation. On the contrary, the plea colloquy in this case only exacerbates the error: Even during the colloquy itself, the district court continued to advocate against exercise of the right to trial and for the plea agreement, sharing with Braxton its "concern over your [Braxton's] unwisely proceeding to trial before a jury," J.A.

13

284, and its worry that Braxton would "unnecessarily jeopardize" himself by failing to plead guilty, J.A. 285. Braxton's statement that his plea was freely given came directly on the heels of these judicial exhortations, and we cannot be confident that it was not itself a product of the Rule 11(c)(1) error in this case. See Barrett, 982 F.2d at 194 (court intervention on behalf of a plea "raise[s] the possibility, if only in the defendant's mind, that a refusal to accept the judge's preferred disposition would be punished").[5]

**2.**

The government's more sustained argument is that in this case, as opposed to Sanya, the district court was required to remark upon the advantages of the plea agreement and disadvantages of trial in order to determine whether Braxton's request to represent himself was "knowing and intelligent" within the meaning of Faretta v. California, 422 U.S. 806

---

[5] In addition to Braxton's statement at the colloquy, the government calls our attention to the court's periodic assurances that it was not in fact involving itself in the plea negotiations. We have no doubt that the district court acted in good faith, believing that it was in compliance with Rule 11(c)(1). But given that we have found to the contrary, we attach no significance to its disclaimers. See Sanya, 774 F.3d at 818 n.4. Nor do we attach any significance to Tuminelli's participation, if any, in the court's discussion of the plea agreement. See Bradley, 455 F.3d at 463 ("[W]e do not examine whether defense counsel participated in the error.") (emphasis in original). And because we are applying the plain error standard of review, defense counsel's failure to object has no independent significance.

14

(1975), as well as to ensure that the plea was effectively communicated to Braxton as contemplated by the Supreme Court's recent holding in Missouri v. Frye, 132 S. Ct. 1399 (2012). We disagree.

In this case, at least, the government's argument is foreclosed by the sequence of events on the day in question, in which the district court first memorialized the government's plea offer under Frye, then denied Braxton's motion to represent himself under Faretta – and only then engaged in the commentary regarding the plea agreement that is at issue here. At the very opening of proceedings, the government, citing Frye, asked to "memorialize . . . for the record" communication of its plea offer to Braxton. J.A. 234. After Tuminelli agreed, the government described the offer, and the court ensured that Braxton understood the terms of the plea agreement he had rejected. At this point, the court brought the Frye portion of the proceedings to a definitive close: "Well, that's fine. The record will reflect you've been so advised of the plea offer in this case. The defendant is ready to proceed to trial." J.A. 238.

Similarly, the Faretta issue was promptly and fully resolved before the comments that give rise to this case. When Braxton moved to represent himself immediately after the plea offer was put on the record, the court noted that the motion,

15

made on the morning of trial, was not timely. It went on, however, to undertake the colloquy contemplated by Faretta, ensuring that Braxton was aware of the "risk inherent in proceeding without counsel" and highlighting specifically the difficulty of making arguments to a jury and cross-examining witnesses without the assistance of an attorney. J.A. 251. And then the court resolved the Faretta issue in its entirety and in no uncertain terms, denying Braxton's motion for self-representation on timeliness grounds: "[W]e're ready – you may be seated now. So I have denied your motion for self-representation. I've noted the analysis. Clearly the main factor is . . . this is not timely. It was not noted to anyone here until suddenly this morning. So it's not timely." J.A. 255.

In short, it was only after it had recorded the rejected plea offer and denied the Faretta motion for self-representation that the district court engaged in the conduct that is the basis of the Rule 11(c)(1) issue here. On this record, neither Frye nor Faretta can distinguish this case from Sanya or excuse what otherwise would be Rule 11 error.

In any event, and regardless of the timing, Faretta and Frye would not justify the comments made here. In Faretta, the Supreme Court held that before a defendant can be deemed to "knowingly and intelligently" forfeit his right to counsel, "he

16

should be made aware of the dangers and disadvantages" of representing himself at trial. 422 U.S. at 835 (internal quotation marks omitted).[6] The district court, as noted above, fully complied with that mandate when it advised Braxton of the difficulties and risks inherent in self-representation, before denying his motion as untimely. It is the court's subsequent comments in favor of the plea agreement that are at issue here — comments that relate not to the dangers and disadvantages of proceeding to trial without counsel, but rather the dangers and disadvantages of proceeding to trial at all, and would have applied with equal force if Braxton had gone to trial with representation as without. See, e.g., J.A. 265 (district court stating that he was "not favorably inclined towards having [Braxton] go to trial") (emphasis added). Even if, as the government urges, something more than the standard Faretta colloquy may be authorized when there is a plea agreement on the

---

[6] The Supreme Court has identified the relevant "dangers and disadvantages" to include the difficulty that a lay person will face in "adher[ing] to the rules of procedure and evidence, comprehend[ing] the subtleties of voir dire, examin[ing] and cross-examin[ing] witnesses effectively, [and] object[ing] to improper prosecution questions." Iowa v. Tovar, 541 U.S. 77, 89 (2004) (quoting Patterson v. Illinois, 487 U.S. 285, 299 n.13 (1988)).

table — a question we need not resolve today — we are confident that Faretta does not stretch so far.[7]

Nor, contrary to the government's suggestion, does Frye require a district court to satisfy itself of the intelligence of a defendant's decision to exercise his right to trial instead of accepting a plea offer. Frye and its companion case, Lafler v. Cooper, 132 S. Ct. 1376 (2012), concern the duty of defense counsel to advise their clients regarding formal plea offers; they do not obligate or permit judges to give advice to defendants on whether to accept such agreements. There is no allegation in this case that Tuminelli either failed to inform Braxton of the government's plea offer in violation of Frye or improperly advised Braxton to reject the offer in violation of Lafler, and the record is plainly to the contrary. And the

---

[7] For the same reason, we reject the government's assertion that Braxton invited any error by asking to represent himself. As discussed above, a district court is not required to explain a plea agreement — let alone recommend that a defendant take it — in response to a request for self-representation. Nor did Braxton otherwise request that the court explain or recommend the plea agreement to him. In the absence of such a request, the invited error doctrine is not relevant to our analysis. See United States v. Jackson, 124 F.3d 607, 617 (4th Cir. 1997) (quoting United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994)) (invited error doctrine applies when the court is asked "to take a step in a case" and "complie[s] with such request"); see also Sanya, 774 F.3d at 817 n.2 (invited error doctrine inapplicable, notwithstanding defense counsel's "allud[ing] to the prospect of 'global resolution'" and possible "appreciat[ion] [for] the district court's enthusiasm for a plea and 'global settlement'").

18

district court, as described above, fulfilled its role under Frye by memorializing the offer on the record at the government's request, prior to making the remarks at issue in this case. Nothing more was required or justified by Frye.

## III.

We have full confidence that the district court acted only with the best of intentions, seeking a just resolution to the serious charge that Braxton faced. Our careful review of the record gives us no reason to think that the court intended to coerce a guilty plea. Nevertheless, because we also conclude that there is a reasonable probability that the district court's plain error affected Braxton's substantial rights, and that our failure to recognize this error would seriously undermine confidence in the fairness of judicial proceedings, we vacate Braxton's sentence and guilty plea, and remand for further proceedings. Although we have no doubt that the original district judge could continue to preside fairly over this case, we follow our usual practice and direct that the case be assigned to a different judge on remand. See, e.g., Sanya, 774 F.3d at 822; Bradley, 455 F.3d at 465.

VACATED AND REMANDED

19