# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50960

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

ANTHONY DRAPER,

Defendant–Appellant.

Appeals from the United States District Court
for the Western District of Texas

Before SMITH, BARKSDALE, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

For the first time on appeal, Anthony Draper claims that the magistrate judge ("MJ") participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11(c)(1). Because any error was not clear or obvious, we affirm.

## I.

Draper was indicted for conspiring to possess with intent to distribute

No. 16-50960

280 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. He retained his own counsel, Dan Wade.

Initial plea negotiations failed. Based on representations at the plea hearing, it appears that Wade proposed a 120-month sentence, but the government rejected that offer. Instead, the government proposed a plea agreement that waived Draper's appellate rights and stipulated to a factual basis, in exchange for a one-point reduction in the offense level under U.S.S.G. § 3E.1(b). Wade determined the agreement was not in Draper's interest, identifying three defects: (1) The agreement waived Draper's appellate rights, which Wade considered "essential"; (2) it required Draper to stipulate to the offense as charged, without limiting his relevant conduct; and (3) it did not commit the government to allocuting at any particular sentence or range. The agreement committed the government only to the one-point reduction.

Draper consented to administration of his guilty plea and Rule 11 allocution by the MJ and appeared before the MJ to enter a guilty plea. At the plea hearing, Wade conveyed Draper's intent to plead straight up to the indictment. The MJ asked whether Wade had "conveyed any and all formal plea offers from the government to Mr. Draper." Wade answered affirmatively. The prosecutor then noted that the government had proposed an agreement. Wade agreed that that proposal had been received and rejected. When the MJ asked Draper whether that was correct, Draper initially conferred with Wade before saying "Yes." But, after the MJ clarified that he was asking whether that offer had been communicated and rejected, Draper responded that pleading straight up was "the only plea [he'd] ever known about" and that he was not aware a plea offer had been made.

The MJ then asked some questions to ascertain whether Draper had been aware of the government's proposal. Draper stated, "No offer. No, sir."

2

No. 16-50960

Wade explained why the agreement was not in Draper's interest and stated that Draper rejected it "[o]nce he realized that he was giving up his right to appeal."[1]  Draper agreed that, even if he had not known about the offer beforehand, based on Wade's explanation, he "kn[e]w about it" now.  The MJ said he would "still let" Draper accept the offer if Draper so desired.  But Draper, after consulting with Wade, formally rejected it.

The MJ began to move on with the plea colloquy, but Draper interrupted to say "[j]ust it was a misunderstanding right then.  I didn't know."  The MJ renewed his attempts to ensure Draper understood the offer and to ascertain whether Draper was rejecting it.  Draper interrupted again:  "May I ask the Court a question?"  Draper asked: "If I may ask the prosecution through the Court what is the offer that they have, like, as of right now besides me signing just the Factual Basis and stuff decide [*sic*] that I understand, if I may.  You see what I'm saying?"

The MJ asked whether the prosecutor, Ms. Young, would "like to speak to that."  She replied, "I don't know that I can help anything, but the offer is plead with the Plea Agreement . . . .  My understanding is that's been rejected, correct?  You don't want to sign a Plea Agreement, correct?"  Wade then chimed in: "He doesn't want to waive his right to appeal.  So, yes, he doesn't want to sign it."  Then the following exchange occurred:

> MS. YOUNG: Well, let's let Mr. Draper answer so we actually have something on the record.
>
> THE COURT: Mr. Draper, so they made you an offer as to the written agreement that she's holding in her hand.  It includes a waiver of your right to appeal, I'm sure.  Is that right, Ms. Young?
>
> MS. YOUNG: That is correct as well as other mechanisms that you

---

[1] After hearing Wade's explanation, Draper stated, "I didn't know that the Plea Agreement was rejected, Judge. . . .  I didn't even—I didn't know that."

No. 16-50960

could agree with the government to do things that would be beneficial to you should you choose to do it.  And you're rejecting that offer, correct?

THE DEFENDANT: No, ma'am.

THE COURT: You want that offer[?]

THE DEFENDANT: Yeah.

THE COURT: Okay.  Let's take a break and have a seat and let Mr. Wade go through that with you.

When the recess ended, Draper, Wade, and Young had signed the government's proposed plea agreement.  The rest of the plea hearing concluded without incident.  The MJ recommended that the district court accept the plea agreement and plea of guilty and that Draper be adjudged guilty of conspiracy to possess with intent to distribute crack cocaine in violation of 18 U.S.C. § 846.  The district court adopted the MJ's findings of fact and recommendation and accepted the guilty plea.

The Presentence Report ("PSR") found Draper a career offender under U.S.S.G. § 4B1.1.  It identified three "prior felony convictions of either a crime of violence or a controlled substance offense": (1) burglary; (2) possession of a controlled substance with intent to distribute; and (3) delivery of a controlled substance.  The career-offender status increased the offense level to 37[2] and the guideline range to 262–327 months.  The district court adopted the PSR without objection and sentenced Draper to 262 months.

Draper believes that the district court erred by labeling him a career offender; because of his waiver of appeal, however, he cannot appeal that alleged error directly.  On appeal, he now claims that the district court participated in plea discussions in violation of Rule 11(c)(1).  Thus, he requests

---

[2] Draper ultimately ended up with an offense level of 34 because the PSR recommended a three-point reduction for acceptance of responsibility.

No. 16-50960

that we vacate the conviction.

## II.

The government contends that the appellate waiver bars this appeal. Draper responds that the waiver was not made voluntarily and knowingly and should not be enforced. Because the merits of Draper's Rule 11 objection implicate the validity of the waiver, we pretermit consideration of the waiver.[3]

Draper did not object to the MJ's statements in the district court, so we review for plain error. To prevail, Draper must show (1) error (2) that is clear or obvious and (3) that affects his substantial rights. *United States v. Jones*, 873 F.3d 482, 497 (5th Cir. 2017). "Even then, the court may correct the error 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[4] Draper has not shown clear or obvious error, so his appeal fails.

Rule 11(c)(1) provides, "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." We take that prohibition seriously. It "is a 'bright line rule'" that "constitutes 'an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process.'"[5] In

---

[3] *See United States v. Story*, 439 F.3d 226, 230 (5th Cir. 2006) (stating that appeal waivers are not jurisdictional); *see also United States v. Harrison*, 777 F.3d 227, 233 (5th Cir. 2015) ("Although Harrison's plea agreement contains an unambiguous waiver of his right to appeal from his conviction and sentence, he alleges that his ratification of the plea agreement was involuntary due to its coercive nature . . . . [W]e have previously allowed appeals despite similar waivers of appeal where defendants have asserted claims of coercion . . . ."); *United States v. Rodriguez*, 197 F.3d 156, 159 (5th Cir. 1999) ("[P]ressure is inherent in *any* involvement by a judge in the plea negotiation process.").

[4] *Id.* (alteration removed) (quoting *United States v. Moreno*, 857 F.3d 723, 727 (5th Cir. 2017)).

[5] *United States v. Hemphill*, 748 F.3d 666, 672 (5th Cir. 2014) (quoting *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013)).

No. 16-50960

short, "the unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that admits of no exceptions."[6]  That strict prohibition "serves to diminish the possibility of judicial coercion of a guilty plea," *id.*, as "pressure is inherent in *any* involvement by a judge in the plea negotiation process."[7]

Draper claims that the MJ's repeated questioning about whether Draper was aware of the proffered agreement, and the MJ's explanation of the agreement, violated Rule 11's prohibition on participation.  Though we have "reject[ed] the narrow view" that improper participation "is limited to the several discrete categories of factual circumstances where the courts have previously found it," *Rodriguez*, 197 F.3d at 159, our caselaw does provide some guidance.

For instance, judges clearly violate Rule 11(c)(1) where their statements could be construed as predictive of the defendant's criminal-justice outcome; suggestive of the best or preferred course of action for the defendant; or indicative of the judge's views as to guilt.  *See United States v. Ayika*, 554 F. App'x 302, 305 (5th Cir. 2014) (per curiam) (collecting examples).  Conversely, it is clear that a judge does *not* violate the rule where performing the duties mandated by Rule 11(b).  *See, e.g.*, *Miles*, 10 F.3d at 1140.  That is, once the defendant has agreed to plead guilty,

> the district court is expected to take an active role by, *inter alia*, addressing the defendant in open court; determining that the plea is voluntary and not the result of force or threats; ensuring that there is a factual basis for the plea; and either accepting or rejecting the plea and stating its reasons for doing so.

*Hemphill*, 748 F.3d at 673.[8]  Thus, where evaluating an objection to improper

---

[6] *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993) (alteration, quotation marks, and citation omitted).

[7] *Rodriguez*, 197 F.3d at 159 (citing *Miles*, 10 F.3d at 1135).

[8] The caselaw describes the court's "active role" as being triggered when the defendant

No. 16-50960

judicial participation, "[t]he proper inquiry is whether the court was actively evaluating a [defendant's decision to plead guilty], as the court is required to do, rather than suggesting what should occur or injecting comments while the parties are still negotiating." *Id.*[9]

The government contends that there is a second category of per se permissible judicial questioning under *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012). Those cases "held that defendants could have viable claims for ineffective assistance ['IAC'] if their counsel fails to communicate a plea offer and the defendant thereby loses the opportunity to plead to less serious charges or to receive a less serious sentence." *Hemphill*, 748 F.3d at 675. Though these holdings do not formally intersect the universe of Rule 11, dicta in *Frye* appears to encourage the use of Rule 11 plea colloquies to confirm that formal offers have been conveyed:

> [T]rial courts may adopt some measures to help ensure against late, frivolous, or fabricated [IAC] claims . . . . [For example], formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence.

*Frye*, 566 U.S. at 146.[10] According to the government, that language authorizes

---

"has agreed to accept a plea offer." *Hemphill*, 748 F.3d at 673; *accord, e.g.*, *Miles*, 10 F.3d at 1140. That phrasing is imprecise. The triggering event is the defendant's decision to enter a guilty plea—whether with an agreement or not. *See* FED. R. CRIM. P. 11(b) (procedure for accepting *pleas*); *cf.* FED. R. CRIM. P. 11(c) (procedure for accepting *plea agreements*). That distinction is typically unimportant. It matters only in unusual cases, like this one, in which the government's proposed agreement is so unfavorable to the defendant that he would rather plead "straight up" to the indictment than accept it.

[9] S*ee also, e.g.*, *Rodriguez*, 197 F.3d at 160 ("Appropriate discussion of a [decision to plead guilty] is limited to exploration of the agreement in order to determine whether it is voluntary and just.").

[10] *See also Frye*, 566 U.S. at 142 ("At the plea entry proceedings the trial court and all counsel have the opportunity to establish on the record that the defendant understands the process that led to any offer . . . ." (citing FED. R. CRIM. P. 11)).

judges administering plea colloquies to perform a "*Frye* inquiry," in which the court inquires into whether defense counsel has delivered all formal plea offers—even though such inquiries go beyond the requirements of Rule 11(b) and have not traditionally been considered part of the district court's "active role." *See Miles*, 10 F.3d at 1140.

The one Fifth Circuit case to confront the issue, *Hemphill*, 748 F.3d at 675, is of limited use here. The panel assumed, without deciding, that *Frye* inquiries are proper; it found error anyway because the judge's comments "went much farther than documenting the plea offer or informing [the defendant] of its terms, as contemplated in *Frye*." *Id.* Thus, the issue here—a judicial statement that conforms to *Frye*, but otherwise exceeds the bounds of Rule 11(b)—remains open.[11]

We agree with the government that *Frye*'s dicta seems to authorize some type of inquiry. But we recognize that authorization is in tension with Rule 11's prohibition on participation. Even assuming the Supreme Court would not ultimately authorize that inquiry such that the MJ's actions were erroneous, the dicta in *Frye* is enough to establish that there was no clear error here. *See Frye*, 566 U.S. at 146.

And, unlike in *Hemphill*, the MJ's inquiries did not stray outside *Frye*'s authorization.[12] The MJ's initial questions as to whether Wade had communicated all formal plea offers to Draper—including the offer to allow Draper to

---

[11] *But cf. United States v. Wiggins*, 674 F. App'x 396, 400 (5th Cir. 2017) (per curiam) (suggesting that "the best practice under these circumstances would have been to ask [the defendant] to confer with his counsel to ensure that he understood the plea offer," but ultimately deciding the case on prejudice grounds, rather than the merits).

[12] *See Hemphill*, 748 F.3d at 675 ("The district court clearly implied that a plea would be preferred."); *see also United States v. Braxton*, 784 F.3d 240, 245–47 (4th Cir. 2015) (finding that the district court's advice to defendant encouraging him to accept the guilty plea fell

plead with a written agreement, and whether Draper agreed that he knew of all plea agreements—seem to exhibit a fairly standard *Frye* inquiry. Draper claims the MJ strayed from that inquiry when, after receiving affirmative answers to both questions, he explained that Draper had the right to know about all plea offers, and he reframed his question to Draper: "[I]nstead of taking that formal offer of entering a written Plea Agreement or even a written Factual Basis, [you've chosen] to plead to the indictment . . . without an agreement, right?"

Though we agree that sustained, unjustified repetition of the *Frye* inquiry could exceed the scope of *Frye* and would become improper involvement,[13] the rule cannot require parsing the transcript so finely. To the extent *Frye* permits judges to engage in that type of inquiry, it must also allow them to ask reasonable follow-up questions and probe the parties' responses. Otherwise, a judge would not be able to probe an ambiguous or unclear answer. And the answer Draper gave to the initial question of whether the plea had been communicated was arguably ambiguous.[14]

After being asked to clarify that he was rejecting the offer, Draper answered, "That's the only plea I've known about, actually." That response appeared to contradict Wade's earlier representation that he had conveyed the plea-agreement offer to Draper. Thus, the MJ tried to confirm that Draper did

outside *Frye*'s permitted inquiry and thus was impermissible participation).

[13] *Cf. Rodriguez*, 197 F.3d at 159 (pointing out that "when Rodriguez indicated that he might want to go to trial, [the judge] asked whether he was 'sure [he] want[ed] to do that'"; that statement was by itself sufficient to constitute improper judicial participation).

[14] Before Draper answered whether all pleas had been communicated, the prosecutor interjected "to make the record clear" that "[t]here was an offer . . . but he rejected" it. The MJ then asked Wade whether that was right, and he said yes. When the MJ asked Draper whether that was right, Draper conferred with his counsel and then said, "Yes, sir." Only then did the MJ seek to clarify that two-word answer to ensure not only had Wade communicated the offer but also that Draper had rejected it.

not know about the plea offer, and the MJ sought Wade's views. Wade explained that he had conveyed the offer to Draper but that Draper had rejected it because (1) it gave up his appeal rights, which he regarded as "essential," (2) did nothing to limit his relevant conduct at sentencing, and (3) suggested no sentencing range.

Draper still maintained he had never before heard the terms of that plea agreement. Draper now urges that the MJ used this exchange improperly to "dr[a]w the parties into a discussion of plea agreement offers and terms." But the MJ was merely performing his task under *Frye*, 566 U.S. at 146—namely, "ma[king] [formal offers] part of the record at a[] subsequent plea proceeding . . . to ensure that a defendant has been fully advised before those further proceedings commence," and it was not clear or obvious error to do so. A *Frye* inquiry is precisely concerned with ensuring the defendant knows of all plea offers, so that when a defendant claims, on the record, that he did not know about an offer, the judge is permitted to ask whether the offer was actually communicated, so long as the inquiry does not imply that the judge has an opinion about the propriety of taking the offer.

The closest the MJ arguably comes to crossing the boundaries of *Frye* is his statement in response to Draper's maintaining no knowledge of the agreement: "If you would like to enter the written Plea Agreement, you can still do it. If the government will still offer it, *I'll still let you do it*." (emphasis added). Draper urges that this statement violated "the plain words" of Rule 11—that is, constituted "participation" in the plea-agreement discussions. That view has intuitive appeal. At this point, the plea negotiations between Wade and the prosecutor were over. With that statement, however, the MJ resurrected the discussion, putting the rejected offer back onto the table.

It is in this statement that the tension between Rule 11 and a *Frye*

No. 16-50960

inquiry is most evident. A revival of the plea discussions arguably involves "participating" in discussions as that word is ordinarily understood.[15] But that alleged participation cannot be clear or obvious error in light of *Frye*, 566 U.S. at 146, which authorizes district courts to "ma[k]e [formal offers] part of the record" so as to "ensure against" IAC claims based on counsel's failure to deliver an offer. The MJ reasonably believed he had uncovered an *actual* failure to deliver. How could it have been clear or obvious error for him to attempt to correct the IAC by "still let[ting]" Draper accept the late-delivered offer? On Draper's view, *Frye* permits district judges to identify IAC but not to remedy it. That is not what the Supreme Court meant or said.[16]

After the MJ indicated that Draper could accept the plea if Draper desired, the defendant conferred with counsel and then explicitly rejected it. Satisfied, the MJ moved on with the plea colloquy and ended the *Frye* inquiry. But, without warning or apparent explanation, Draper interrupted to say the earlier *Frye* discussion had been "a misunderstanding." It is unclear what Draper meant.

The MJ then explained his understanding of how the government had proposed a written agreement and how Draper had rejected it. The MJ spent several minutes trying to nail down (again) whether Draper understood and rejected the agreement. Upon Draper's request, the MJ asked the prosecutor to describe the undelivered offer again. The prosecutor demurred, saying only

---

[15] *Cf. United States v. Bradley*, 455 F.3d 453, 462 (4th Cir. 2006) (explaining that the court "participated" in plea discussions by, among other things, "initiat[ing]" them); *United States v. Tobin*, 676 F.3d 1264, 1307 (11th Cir. 2012) (stating that the court "participated" by "indicat[ing] that it would like the defendants to begin and engage in plea discussions"), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013).

[16] *See Frye*, 566 U.S. at 142 (approving use of plea hearings to ensure "the defendant has been given proper advice or, if the advice received appears to have been inadequate, to *remedy that deficiency before the plea is accepted*" (emphasis added)).

No. 16-50960

that the offer "is to plead with the Plea Agreement." The prosecutor then asked Draper whether he was still rejecting that offer, and *Wade* answered that Draper had rejected the offer. The prosecutor, however, asked that *Draper* state for the record that he rejected the offer.

At that point, the MJ told Draper that the government had made him an offer to plead with a written agreement and that the proposed agreement would waive his appellate rights. The prosecutor agreed with that description and indicated to Draper that the proposed agreement came with "other mechanisms" that could "benefi[t]" him. The prosecutor then asked Draper whether he was rejecting that offer, and Draper replied, "No." The MJ then asked the necessary follow-up, "You want the offer[?]"[17] And, Draper answered affirmatively. The MJ called a recess for Wade to "go through" the agreement with Draper.

Draper urges that this latter discussion constitutes improper participation because it went beyond determining whether an offer had been communicated and *explained the details* of the offer. Though these statements may fall within the ordinary meaning of "participation," given that the judge facilitated the conversation, this again seems to be the kind of participation blessed by *Frye*. The aim of the entire exercise is "to ensure that [the] defendant ha[d] been fully advised" of any "formal offers," *Frye*, 566 U.S. at 146, and that is exactly what the MJ was doing.[18] Given *Frye*, these statements, under our plain-error standard of review, do not constitute the requisite clear or obvious error.

---

[17] The transcript has that reply as ending with a period, as though the MJ made a declaration instead of asking a question. But, the entire context (especially Draper's reply) indicates that the MJ intended to *ask* Draper whether he wanted the offer. Thus, the reply rightly should be punctuated by a question mark.

[18] *See also Hemphill*, 748 F.3d at 675 (opining that *Frye* "contemplated" that judges can "document[] the plea offer" and "inform[] [the defendant] of its terms").

No. 16-50960

AFFIRMED.