# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-50889

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

MARCELINO MARTINEZ, also known as Nino, also known as Marcelino Martinez, Jr.,

      Defendant - Appellant

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:17-CR-53-1

---

Before HIGGINBOTHAM, JONES, and COSTA, Circuit Judges.

PER CURIAM:*

    Appellant Marcelino Martinez appeals his guilty plea conviction for conspiracy to posses with intent to distribute methamphetamine. Martinez contends that the district court violated Federal Rule of Criminal Procedure 11(c)(1) when it improperly involved itself in plea negotiations. Because Martinez has failed to show a reasonable probability that, but for the

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-50889

participation, he would not have entered the plea, he has not demonstrated plain error that affected his substantial rights. We affirm.

I.

Between October 2014 and February 21, 2017, Martinez conspired with several individuals to possess with intent to distribute methamphetamine. Martinez would direct his accomplices to pick up multi-ounce quantities of methamphetamine from his supplier in Katy and Houston, Texas to be redistributed in Central Texas. Martinez instructed his co-conspirators where and when to conduct the deliveries and directed couriers and distributors to specific stash houses. Martinez was also involved in the financial transactions, directing his co-conspirators to receive and deliver proceeds from the drug transactions.

On February 21, 2017, Martinez and six co-defendants were charged with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and five counts of possession with intent to distribute methamphetamine in violation of § 841(a)(1). The district court entered a scheduling order setting a hearing on pre-trial motions, followed by jury selection and trial on May 1, 2017. That order set a plea agreement deadline of April 28, 2017 pursuant to *United States v. Ellis*.[1] On April 19, 2017, Martinez signed a Rule 11(c)(1)(C) plea agreement, pleading guilty to the conspiracy count and agreeing to a sentence of 151 months, pending the court's approval.

On April 26, the government filed an assented-to motion for a continuance, advising the court that Martinez had changed his mind and had

---

[1] 547 F.2d 863 (5th Cir. 1977). The *Ellis* order provided, in relevant part, "any plea bargain or plea agreement entered into by the parties in this cause shall be made known in writing to this Court on or before April 28, 2017."

indicated to the government that he wanted to proceed to trial.[2] The court held a docket call on April 28, 2017 (pursuant to the scheduling order). During that call, the court informed Martinez that the plea agreement deadline expired at 5:00 p.m. that day and discussed setting a trial date. Although the court contemplated the possibility of postponing the trial by a few weeks to wait for one of Martinez's co-defendants to enter her guilty plea, the court decided to set the trial for May 22. If Martinez decided to enter a plea before 5:00 p.m., that trial date would be set aside.

The court then started to excuse Martinez. At this point, Martinez asked the court if he could request new counsel, which the court denied, and then Martinez asked what an "*Ellis* deal" was. The district court counseled that Martinez's lawyer could explain what an *Ellis* order was, but briefly told Martinez that it was a deadline for entering into a plea agreement.[3] Martinez voiced concern that he did not understand why his first lawyer had been removed from the case, and the court explained that the Federal Public Defender who had initially been appointed was forced to withdraw because of a conflict of interest.[4] The court explained the appointment process, then told Martinez:

> The bottom line is, Mr. Martinez, you've got a couple of hours today to decide if you wish to plead or not. And if you stay and want a trial, which is your constitutional right, there's no problem. I've

---

[2] The government informed the court that one of Martinez's co-defendants, Brandy Meeks, had her first appearance in front of a magistrate judge the same day Martinez indicated he wanted to proceed to trial. Because Meeks had not yet decided whether to enter a plea or proceed to trial, the government sought a continuance to allow her counsel to prepare for trial should both Martinez and Meeks be tried jointly.

[3] You have a certain amount of time to negotiate a plea with the government, if you wish to. If you do not get an agreement, then you go to trial. But there are consequences for that that the law has placed here. Usually it is a three-level increase if you go to trial and are found guilty under the guideline system. It's not always. It depends on the evidence one way or the other."

[4] The court appointed attorney John Butler to take over representation.

just gotta set it. I just have lots and lots of trials. I've got criminal trials set all the way through this year into next year. Many of them are large. Most of them won't go to trial, but I don't know which ones will and which ones won't, so I have to arrange for the ability to try the case. And that's where you are.

It doesn't look very good when the other Martinez and Padilla, Meeks and Welsh and Hinds [Martinez's co-defendants] have already entered pleas because that makes all of them witnesses, if they wish to testify or the government wish [sic] for them to testify. But that's just a factor that you could talk intimately with Mr. -- with your lawyer. But go ahead and talk to him and talk to him about the *Ellis* order. And just like the gentleman beforehand, if he enters a plea today before 5:00 where I can cut the jury numbers down, then he's still within the *Ellis* order. But after today, he's not.

Later that day, Martinez signed a Rule 11(c)(1)(C) "amended" plea agreement providing for a sentence of 151 months pending the court's approval.[5] That same day, Martinez pleaded guilty before the magistrate judge, confirming that he had read the agreement, discussed it with counsel, and agreed to its terms.

Following the recommendation of the magistrate judge, the district court accepted the guilty plea but reserved acceptance of the agreement until sentencing. Probation prepared a PSR calculating a Guidelines range of 360 months to life based on an attributable drug quantity of 104 kg of methamphetamine. On July 14, 2017, the district judge held a sentencing hearing and rejected the plea agreement.[6] The district court expressed its concern with the agreement:

---

[5] The only difference between the April 28 plea agreement and the April 19 plea agreement was a correction to the statutory maximum for a violation of 21 U.S.C. § 841(b)(1)(A).

[6] At that hearing, the court probed the government's decision to agree to a sentence of 151 months for an offense with a Guidelines range of 360 months to life: "I have an 11(c)(1)(C) sentence for 151 months, and I'll hear from the government on how that's possible." The

No. 17-50889

> This was a wire case. There was information and months and months of expense to the government on the activities. It just seems to me unfathomable that you can make a difference between five and 104 guessing. But what is more incredible is to try to tie my hands to a sentence, which I will not do.

The district court then pressed the government on why it chose to execute a Rule 11(c)(1)(C) agreement.[7] The court then stated:

> It was a wire. It didn't make any difference if he's going to plea or not. It's a three or four-day case. He's going to be found guilty. It doesn't make any difference one way or the other. So you were tieing [sic] my judgment up simply to avoid a trial?
>
> . . .
>
> But here, I'm looking at a life sentence. . . . When I authorize and --authorized the wire and the extensions to the wire and all of the expense it is to the government and then, you come up with a disparity like this and you tie my hands or the judge's hands, I want to know why. It's just a mistake. It was just a mistake. It's a bad mistake. If it's intentional, it's worse.

The district court declined to accept the plea and set the case for trial.

On July 26, 2017, the government filed a second superseding information, charging Martinez with conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846. The statutory maximum for § 841(b)(1)(C) was 20 years, as opposed to Martinez's initial plea to the § 841(b)(1)(A) violation, which

---

government explained that it thought it would have been difficult to prove the drug quantity reflected in the PSR based on the witness testimony available. The government agreed to a plea based on a drug quantity of between one and five kilograms (rather than the 104 kg calculated in the PSR).

[7] "Well, if you recall, this was a very late plea. We thought it was going to be on the Wednesday before the docket call. I know the Court expressed some frustration on the Friday that Mr. Butler and Ms. Fernald appeared. . . . I think Mr. Martinez gave Mr. Butler some . . . unanticipated resistance at the eleventh hour. We thought it was going to be a plea the whole time, or I did . . ."

No. 17-50889

carried a statutory maximum of life. Martinez pleaded guilty without the benefit of a plea agreement before the magistrate judge on July 27, 2017. On September 29, 2017, the district court sentenced Martinez to the statutory maximum of 240 months followed by five years supervised release. This appeal followed.

II.

Martinez did not object to the district court's alleged improper participation in plea negotiations, so we review for plain error.[8] To prevail, Martinez must show (1) error (2) that is clear or obvious and (3) that affects his substantial rights.[9] "Even then, the court may correct the error 'only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'"[10]

Martinez complains of two separate instances of alleged improper participation by the district court in the plea negotiations. He argues that during the April 28, 2017 docket call, the district court improperly opined on Martinez's likely success at trial by noting that "it doesn't look very good" in light of his co-defendants' decisions to plead guilty and their potential to serve as witnesses against Martinez. Martinez also points to the district court's description of the three-level Guidelines increase that generally accompanies a conviction after trial. He asserts that his decision to plead the same day as the docket call demonstrates the coercive nature of the district court's comments.

---

[8] *United States v. Mondragon-Santiago*, 564 F.3d 357, 368 (5th Cir. 2009).

[9] *United States v. Draper*, 882 F.3d 210, 215 (5th Cir. 2018) (citing *United States v. Jones*, 873 F.3d 482, 497 (5th Cir. 2017)).

[10] *Jones*, 873 F.3d at 497 (quoting *United States v. Moreno*, 857 F.3d 723, 727 (5th Cir. 2017)).

6

No. 17-50889

Martinez also contends that the district court's comments at the July 14, 2017 sentencing hearing were error. Specifically, Martinez asserts that the district court again improperly entered the negotiations when it suggested that Martinez was "going to be found guilty" and expressed concern with the 151-month recommendation given the Guidelines range and the substantial resources involved in the wiretap investigation. Martinez highlights that the district court stated Martinez was "looking at a life sentence." Martinez contends that the errors are plain given existing precedent, his substantial rights were affected because he can show a reasonable probability he would have proceeded to trial absent the comments, and the errors impacted the integrity of the judicial proceedings.

The government concedes that the district court's statement that it did not "look very good" for Martinez may have been a technical violation of Rule 11(c)(1). However, the government suggests that it was an isolated comment made in the context of explaining the court's scheduling concerns and answering Martinez's questions about the meaning of an *Ellis* order. The government also asserts that Martinez failed to show that he would not have pleaded guilty absent the district court's comments. With respect to the statements at the sentencing hearing, the government contends that while the court's statements may have been error had they been made prior to a negotiated plea agreement, they were not error where Martinez had already signed an agreement.

Federal Rule of Criminal Procedure 11(c)(1) provides that "[a]n attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions."[11] Rule 11 allows the district court to

---

[11] Fed. R. Crim. P. 11(c)(1).

accept or reject a plea agreement.[12] In its consideration of the plea agreement, the district court is required to "address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises" and to "determine that there is a factual basis for the plea."[13] This circuit has "characterized Rule 11's prohibition of judicial involvement as a 'bright line rule' and 'an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process.'"[14] The prohibition on judicial participation in plea negotiations (1) "diminishes the possibility of judicial coercion of a guilty plea," (2) preserves the judge's impartiality by preventing the judge from having a stake in a particular agreement, and (3) prevents a "misleading impression" of the judge's role in the proceedings, protecting the judge's position as a neutral arbiter.[15]

This court has rejected a "narrow view" of Rule 11 that would limit violations to "discrete categories of factual circumstances where the courts have previously found [a violation]," instead making clear that "Rule 11 and its interpretive case law unmistakably prohibit all forms of participation."[16] At the same time, previous "caselaw does provide some guidance."[17] "For instance,

---

[12] Fed. R. Crim. P. 11(c)(4)-(5).

[13] Fed. R. Crim. P. 11(b)(2)-(3).

[14] *United States v. Pena*, 720 F.3d, 561, 570 (5th Cir. 2013) (internal citations omitted).

[15] *United States v. Rodriguez*, 197 F.3d 156, 158–59 (5th Cir. 1999) (quoting *United States v. Daigle*, 63 F.3d 346 (5th Cir. 1995) (internal quotation marks omitted)).

[16] *Rodriguez*, 197 F.3d at 159 (rejecting government's argument that improper participation was limited to previously defined categories, "namely cases where the court injected terms into the agreement, changed the terms of the agreement, or discussed probable sentences").

[17] *Draper*, 882 F.3d at 215. This court has also found a Rule 11 violation based on improper participation from a district court's statement in an off-the-record conference that it "would most likely follow any sentence recommendation by the government," *Daigle*, 63 F.3d at 348–49; a district court's statement that "[r]ight now [the defendant is] looking at five years minimum and in about 30 minutes [i.e. if he did not enter the plea] he's going to be looking at ten years minimum," *Rodriguez*, 197 F.3d at 158–60; and a district court's statement that "the best chance[] here, quite frankly, for him is the plea of guilty and the

No. 17-50889

judges clearly violate Rule 11(c)(1) where their statements could be construed as predictive of the defendant's criminal-justice outcome; suggestive of the best or preferred course of action for the defendant; or indicative of the judge's views as to guilt."[18] The motives of the district court are irrelevant, and this court has "not hesitated to find a Rule 11 error even when the court's participation is minor and unintentional."[19]

If the district court's statements constituted clear and obvious Rule 11 error, the court then determines whether the error affected the defendant's substantial rights.[20] "[A] defendant who seeks reversal of his conviction after a guilty plea, on the ground that the district court committed plain error under Rule 11, must show a reasonable probability that, but for the error he would not have entered the plea."[21] Violation of Rule 11(c)(1) does not require automatic vacatur of the guilty plea—"vacatur of the plea is not in order if the record shows no prejudice to [defendant's] decision to plead guilty."[22] "[T]he primary focus of [the] prejudice analysis must be the period between the district court's participation and [the defendant's] guilty pleas, [but the] review is also 'informed by the entire record.'"[23]

The April 28 docket call statements made by the district court were made in the context of responding to Martinez's confusion about the meaning of an

---

concurrent sentencing [of the charges]," *United States v. Ayika*, 554 F. App'x 302, 303 (5th Cir. 2014) (per curiam).

[18] *Draper*, 882 F.3d at 215.

[19] *Ayika*, 554 F. App'x at 305; *see also Pena*, 720 F.3d at 571 ("Given the sanctity of Rule 11's absolute prohibition on any form of judicial involvement in plea negotiations, we conclude that, *albeit unintentionally*, the district court here stepped over the line and violated Rule 11 . . .") (emphasis added).

[20] *Pena*, 720 F.3d at 573.

[21] *Id*. (internal quotation marks and citation omittd).

[22] *United States v. Davila*, 569 U.S. 597, 601 (2013).

[23] *Pena*, 720 F.3d at 574 (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004)).

*Ellis* order.[24] The district court attempted to end the exchange after setting a trial date, but was stopped by Martinez's request for new counsel and query about the *Ellis* order. The district court directed Martinez to speak to his new counsel, explained why the Federal Public Defender had been removed from the case, and emphasized that the timing of the *Ellis* order meant that Martinez had until 5:00 p.m. to consider entering a plea. Even if the district court's error in opining on the likelihood of success at trial was clear and obvious, Martinez has not shown an adverse effect on his substantial rights. While a close temporal proximity between the timing of the plea and the district court's participation can support a finding of prejudice,[25] temporal proximity is not dispositive here. Given Martinez's misunderstanding of the meaning of the *Ellis* order, the timing of his plea is attributable to the district court's explanation of the deadline, rather than any improprietous suggestion about Martinez's likelihood of success at trial. Ultimately, Martinez accepted a favorable Rule 11(c)(1)(C) plea that limited his potential sentence to 151 months on a charge that carried a statutory maximum of life imprisonment. The benefit of that plea agreement, taken together with the imminent expiration of the *Ellis* order deadline, likely influenced Martinez's decision to enter the plea. Martinez has not shown a reasonable probability that but for the district court's statements on the docket call he would not have entered the plea.

---

[24] *See e.g.*, *United States v. Larrier*, 648 F. App'x 441, 443 (5th Cir. 2016) ("The district court's comments, when read in context, do not reflect obvious improper participation in a plea discussion. The challenged remarks made by the district court were made in the context of answering Larrier's inquiries, addressing her misunderstandings about the guilty-plea process, and ensuring that she understood her choice of pleading guilty or going to trial. The comments did not create an appearance of impartiality or coercion.").

[25] *Davila*, 569 U.S. at 611 (comparing a plea "soon after" judicial participation with a three-month delay); *Pena*, 720 F.3d at 574 (holding that the fact defendant pleaded guilty "[j]ust five days later" "support[ed] a finding of prejudice").

No. 17-50889

With respect to Martinez's challenge to the district court's statements at his first sentencing hearing on July 14, 2017,[26] those statements were made *after* Martinez had entered the plea and signed the plea agreement. This court has emphasized that the timing of the district court's participation is important: "We have noted the distinction between a sentencing court's comments *before* the parties have disclosed the terms to the court and the court's statements *after* this time."[27] Once a plea agreement is disclosed in open court the district court is *required* to examine the plea agreement to determine whether it is voluntary and has a sound factual basis.[28] "The commentary to Rule 11 and [this circuit's] previous decisions make it clear that the district court is expected to take an active role in evaluating a plea agreement, once it is disclosed."[29] However, while "Rule 11 requires that a district court explore a plea agreement once disclosed in open court . . . it does not license discussion of a hypothetical agreement that it may prefer."[30]

In *Crowell*, the court distinguished between comments made in the context of the district court's evaluation of a first plea agreement presented by the parties and comments made after the rejection of the first plea agreement, but before the second plea agreement was in its final form.[31] While the content of the comments was similar—the district court opined on the likely sentence if Crowell were convicted—the timing was determinative: "The fact that this

---

[26] Specifically, the district court stated: (1) "It was a wire. It didn't make any difference if he's going to plea or not. It's a three or four-day case. He's going to be found guilty. It doesn't make any difference one way or another." and (2) "But here, I'm looking at a life sentence." Martinez also challenges the court's admonitions that it had authorized substantial expenditures for the wiretap and that the government was tying the court's hands to a sentence well below the guideline range.

[27] *Pena*, 720 F.3d at 572.

[28] *Id.* at 570 (citing Fed. R. Crim. P. 11(b)(2) – (3)).

[29] *United States v. Crowell*, 60 F.3d 199, 204 (5th Cir. 1995).

[30] *United States v. Miles*, 10 F.3d 1135, 1140 (5th Cir. 1993) (finding that the "district court's comments went beyond exploring the presented agreements").

[31] *Crowell*, 60 F.3d at 204.

comment was injected into the discussions while the parties were still preparing the second agreement is critical. It is precisely this type of participation that is prohibited by Rule 11."[32] In other words, statements made in considering a plea agreement presented by parties are treated differently than statements made when the parties are still negotiating. Similarly, in *Pena*, the court noted that "the fact that the court made the statements while plea negotiations between Pena and the government were ongoing is crucial."[33] So the "proper inquiry is whether the district court was actively evaluating a plea agreement, as the court is required to do, or whether the court is suggesting an appropriate accommodation for a subsequent plea agreement, something this court found prohibited in *Miles*."[34]

The statements at issue here occurred in connection with the district court's evaluation of Martinez's first plea agreement. Although it is true that the court rejected that agreement, meaning that further plea negotiations took place after the comments were made, these statements did not constitute clear and obvious error because Martinez had made the decision to plead guilty and at that point, "the district court is expected to take an active role" in evaluation of the agreement.[35] "The triggering event is the defendant's decision to enter a guilty plea—whether with an agreement or not."[36] Because the statements were made after Martinez's decision to plead guilty, the district court was not opining on the likely or correct sentence.[37]

---

[32] *Id.*

[33] *Pena*, 720 F.3d at 572.

[34] *United States v. Smith*, 417 F.3d 483, 488 (5th Cir. 2005) (internal citation and quotation marks omitted); *see also United States v. Hemphill*, 748 F.3d 666, 673 (5th Cir. 2014) (distinguishing between comments made during the plea colloquy and comments made before defendant accepted the government's offer).

[35] *Hemphill*, 748 F.3d at 673.

[36] *Draper*, 882 F.3d at 215 n.8.

[37] *Crowell*, 60 F.3d at 204.

No. 17-50889

III.

Because Martinez has not shown that the district court plainly erred, the district court's judgment is affirmed.